BRINKLEY BEAN v. WESTERN NORTH CAROLINA RAILROAD COMPANY.

*Pleading—Practice—The Code—Legal and Equitable Defences— Release —Issues —Fraud — Undue Advantage — Contributory Negligence—Fellow-servant.*

1. Under the present method of procedure, parties may allege their cause of action, and their rights in and about the same, whether legal or equitable, in the same action.

2. Where the defendant, a railroad company, as a defence to an action for damages, set up a release, it is proper to set up in reply matters which, if true, will avoid it, whether legal or equitable.

3. Only issues arising naturally upon the pleadings should be submitted, but where they are subdivided, this is not a ground for new trial, unless it appear that they were thereby confusing, complicated or prejudicial.

4. Where the complaint does not allege fraud, in terms, but does set forth facts which, being denied by the defendant, raise issues as to unfairness, surprise and undue advantage, by means of which an instrument was obtained, the Court will not let the defendant take advantage of it.

5. Contradictory issues under the different aspects of the pleadings are not objectionable under the code system.

6. Where there was an allegation and evidence that the defendant, a railroad company, left a ledge of rock in such a position as that the jar of the passing train would probably cause it to fall on its track, and it did so fall, and plaintiff was thereby injured: *Held*, the issue of negligence was properly submitted to the jury.

7. The fact that it was the duty of a track-walker, a fellow-servant of plaintiff, to examine the condition of the track just before the passage of the train, cannot excuse the defendant of negligence.

8. This was not an ordinary hazard, and, in the absence of evidence to show that plaintiff knew of the dangerous condition of the ledge, the Court rightly refused to instruct the jury that there was contributory negligence on his part.

This was a CIVIL ACTION, tried at March Term, 1890, of BUNCOMBE Superior Court, before *Connor, J.*, by plaintiff to recover damages for injuries sustained by him while he was in the service of the defendant railroad company as a brakeman on the freight train, occasioned by its negligence, etc.

Among other things, it is alleged in the complaint—

"3. That at the point where the engine and cars were thrown from the track, as mentioned in the preceding paragraph, there was a large mass of stone, being the end of an adjacent mountain, standing up at an angle of between forty-five and sixty degrees, extending into the river, the latter being at this point of the depth of about twenty feet. The defendant company, in making room for the road-bed, did not cut the full width of the track into the said mass of stone so as to give the said road-bed a firm foundation, but built a part of the track upon a substructure of wood and dirt that had a precarious footing on the sloping mass of stone aforesaid. This mass of stone on the opposite side of the track, and forming the upper portion of the cut at this point, was much loosened by the blasting that was done there when the track was located by the defendant, and being left without sufficient support at its foundation, pieces of it were liable at any time to be precipitated upon the

track. The stone that caused the engine to be thrown from the track, as hereinbefore mentioned, was in the large mass referred to, and after the location of the road-bed by the defendant, had been left, one end of it and part of one side, wholly unsupported, and the upper end of it was so feebly held by the mass above it that the jar and concussion occasioned by the passing trains were likely at any moment to precipitate it upon the track, which was only a few feet from it.

"4. The unsafe condition of the road-bed and track at this point, their proximity to the river on one side and the mass of stone on the other, considering the depth of the river and its rapid flow, and the loose and unsubstantial character of the overhanging mass of stone, rendered the passage of an engine and cars on the road extremely hazardous, so much so that, in case of accident, escape from danger, by leaping to the right or the left, was impossible; of all this the defendant might and would then and theretofore have known by due care; and had it regarded its duty, it would have so located its road-bed and protected the track from the over-hanging mass of stone as to have prevented obstructions from falling on the track, and otherwise have rendered the road safe and secure against damage to employees and others passing over the road. And yet the defendant, not regarding its duty, was so careless, negligent, and unskillful in this behalf that it failed to provide a safe road-bed and track, and failed to keep it free and clear of obstructions, by reason whereof the plaintiff, while in the employment of the defendant, and while engaged in the discharge of his duties as brakeman, and where he was himself in no fault, received the aforesaid injuries in the manner hereinbefore described."

The defendant denied the material allegations of the complaint, and alleged as affirmative defence —

1. That if injured at all, it was not by reason of the negligence of this defendant, but by plaintiff's negligence contributing to the said injury.

2. That if injured, it was not by reason of the negligence of defendant, as alleged in the complaint, but by reason of the negligence of a fellow-servant of the plaintiff in the service of the defendant.

For a third defence to this action, defendant says —

1. That after the injuries complained of, and before the commencement of this action, the plaintiff, on the 18th day of December, 1885, executed and delivered to this defendant a release from all liability to him, plaintiff, on the part of defendant, by reason of the injuries received, as suffered by the plaintiff, as alleged in the complaint. That the said release was executed by this plaintiff, and delivered as aforesaid, for valuable considerations, and in full settlement of any claim plaintiff may have had against this defendant by reason of any negligence, as alleged in the complaint of plaintiff, on the part of this defendant, its officers or agents, and this said release this defendant pleads in bar of this action, and makes due protest of the same in this its answer.

The plaintiff replied to this answer as follows:

"The plaintiff. replying to so much of the defendant's answer as set up an alleged release of claim to damages, says—

1. That he denies the same to be true.

2. That if he did sign the said alleged release he did it under the impression, belief and understanding that he was signing a receipt for wages then due him by the defendant company, and that at said time, to-wit, the date of the alleged release, the defendant company was indebted to the plaintiff in the sum of about fifty dollars, due as wages earned in the employment of said company.

3. That said alleged release was obtained by the agent of the defendant company in a few days after the said injuries

were received and while plaintiff was suffering great bodily pain therefrom, mental anxiety by reason thereof, and was unable to comprehend the meaning or effects of the same.

4. That the plaintiff was at the time the alleged release was procured, and is now, an ignorant, illiterate colored person, unable to read or write, and did not understand or comprehend the purport of said alleged release."

At the trial, on motion of the plaintiff, the following issues were submitted to the jury:

1. Did the plaintiff sign and deliver the release mentioned in the answer of December 18th, 1885?

2. Did plaintiff sign said release under the impression, belief and understanding that it was a receipt for wages due him from the defendant company?

3. Was said release obtained by the defendant company while the plaintiff was suffering great bodily pain and mental anxiety from the injuries received by him?

4. Was the plaintiff, by reason of such bodily pain and mental anxiety, unable to comprehend the purport and effect of such release?

5. Was the plaintiff injured by the negligence of the defendant company, as alleged?

6. Did the plaintiff, by his negligence, contribute to the injury?

7. Was the plaintiff injured by the negligence of a fellow-servant, and, if so, what one?

8. What damage has plaintiff sustained by reason of said injury?

The defendant excepted to the above issues, and tendered the following as the issues arising upon the pleadings:

1. Was the plaintiff injured by the defendant company as alleged in the complaint?

2. Did the plaintiff contribute to his injury by his negligence?

3. Was the plaintiff injured by the negligence of a fellow-servant, and, if so, what one?

4. Did the plaintiff execute and deliver to the defendant company the paper-writing mentioned in the pleadings as a release of his claim for damages, and in settlement of the same?

5. What damage, if any, is the plaintiff entitled to recover?

Defendant excepted to the ruling of the Court, refusing to submit the issues tendered by it.

The jury responded to the first issue "Yes," to the second "No," to the third "Yes," to the fourth "Yes," to the fifth "Yes," to the sixth "No," to the seventh "No," and to the eighth "Fifteen hundred dollars," which responses duly appear in the record proper.

The following is so much of the evidence as has reference to the stone in the precipitous side of the mountain, the condition thereof, and the fall of parts of the same on the road:

" The stone had to be cut out to make the track at the place where the train run off. A rock had fallen on track from the side of the mountain. I lived in 1885 at Hot Springs; I am acquainted with the road where the accident occurred; the railroad, after crossing the bridge, passes a curve; where the accident happened the strata of rock had been cut off, pine stump in it, water running through it; it was a cold November morning; the bed of the road was cut out of the rock; the dip of the rock was such that, when loosened, either by the freezing of water or the jarring of the train, they would naturally be thrown upon the track; some of them were of considerable size, as large as a millstone; the rock was the apparent cause of the wreck; trains ran along there every day. I have seen the chief engineer, Major Wilson, there; they had Captain Payne there as roadmaster; he passed there every day; the condition was remarked by everybody as dangerous; it remained there four years; after the accident the defendant built a rock

wall; they have begun to cut off the rocks; the rock is a granite flint; breaks off in blocks; two men were killed."

"The place was dangerous looking, apparently, to anyone. A man on top of a freight car would be on a level with the rock. It would not appear dangerous to a man on top of a freight car."

"I live at Hot Springs. I remember the wreck in 1885. The road was cut out of the side of the mountain; the rocks projecting out of the mountain. I went there after the accident; could not see the engine. The defendant had a road-walker there. It was the duty of the track-walker to go before and after each train, and to see that the road was clear and not obstructed. He walked at the head of trains to see if there was any obstruction. I have seen him there. I do not know that there was any track-walker there that morning."

"I was in the employ of the Western North Carolina Railroad; painted Deep Water bridge; I noticed the condition of the railroad near there; I called Major Banner's attention to it. He was at the time assistant engineer."

The following is a copy of the release executed by the plaintiff in question:

STATE OF NORTH CAROLINA, ⎱
⠀⠀⠀Rowan County. ⎰

Know all men by these presents, that I, Pink Bean, a train hand on the Western North Carolina Railroad, for and in consideration of thirty dollars, and other considerations made me thereto, the receipt whereof is hereby acknowledged, do hereby release the Western North Carolina Railroad Company from all claims, whatsoever, which I have or may have against them for injuries caused me while in their employ, and especially for damages for injuries

107—47

received on the 25th day of November, 1885, near Warm Springs.

Witness my hand and seal, this the 18th day of December, 1885.

his<br>
PINK  ✕  BEAN.   [Seal.]<br>
mark

Witness: H. A. WYCHE.

The defendant's counsel requested the Court to give the following instructions to the jury:

1. That negligence was a question for the Court, and as there was no controversy between the plaintiff and defendant as to the facts shown by plaintiff, and relied on by him, pertaining to the 5th issue, it was for the Court to say whether such undisputed facts constituted negligence; and in law they did not, and the jury must so find, responding to such issue in the negative.

2 That contributory negligence was a question for the Court, and as there was no controversy between the plaintiff and defendant as to the existence of the facts and circumstances relied upon by the defendant, and testified to by the plaintiff and his witnesses, to establish contributory negligence on his part, the same did so establish it, and the jury must find the 6th issue in the affirmative.

3. That, according to the testimony of one of plaintiff's witnesses, one Stone, the defendant has provided at the point on its road where the plaintiff was injured, a track-walker, whose duty it was to precede and follow each train passing over that portion of the road for the purpose of keeping the same clear of obstacles, and his failure to notify the coming train, on which the plaintiff was engaged, of the obstacle on the track, or to remove the same, was negligence on his part, and being a fellow-servant with the plaintiff the jury should find the 7th issue in the affirmative.

4. That there is no evidence of any undue influence, fraud or virtual mistake in the execution of the release mentioned in this case.

5. That the only question for the jury in this action, in passing upon the execution of the release, is as to whether he signed it.

6. A weak understanding on the part of the plaintiff is not sufficient to set aside a release of the kind mentioned here, but there must be connected with that understanding some fraud, or surprise, fraud practiced on plaintiff by the defendant, or surprise on his part.

7. If the parties have equal means of information the rule of *caveat emptor* applies, and the injured party cannot have redress if he fail to avail himself of those sources of information, which he may readily reach unless prevented by the artifice or contrivance of the other party.

8. Before the release, mentioned in the pleadings, can be set aside the jury must find that the defendant practiced fraud upon the plaintiff in obtaining it from him, or obtained it, both parties being mistaken, or acting under a mistake, or exercised an undue influence over him in obtaining it from him.

9. There is no evidence of fraud, to go to the jury, practiced upon this plaintiff in obtaining from him the release.

10. There is no evidence of mutual mistake of the parties, or the mistake of one induced by the fraud of the other.

11. There is no evidence of undue influence exercised over the plaintiff by this defendant in obtaining from him the release.

12. There are no such allegations in the reply by this plaintiff as entitled him to have this release set aside, except the first one, wherein plaintiff alleges he did not sign and deliver it.

13. That, in the light of the allegations of the reply, the same are not material, except as to the signing and delivering the release, to which the first issue only is responsive.

The defendant excepted to the charge of the Court, and assigned as errors in the same the Court's failure to give, as a part of the same, the instructions asked for by the defendant.

There was a finding by the jury as before specified, and as appears in the record proper.

Upon these findings the defendant asked for judgment in its behalf, which the Court refused, and gave judgment for the plaintiff, which is set out in the record proper.

The defendant excepted, and appealed to this Court.

*Messrs. Jones & Shuford* (by brief), for plaintiff.
*Messrs. D. Schenck, F. H. Busbee* and *C. Price,* for defendant.

MERRIMON, C. J.—after stating the case: The two first assignments of error have reference to the issues of fact—first, those which the Court submitted to the jury; and secondly, those proposed by the defendant, and which the Court refused to submit. The two may be considered and disposed of together. In this connection, it is important to observe the nature and purpose of the pleadings, and the same of the issues arising upon them, and how they arise.

The plaintiff alleges that he was the servant—a brakeman—on a train of cars of the defendant, and while he was employed about his duties as such, he sustained physical injuries, and damages as a consequence, occasioned by the default and neglect of the defendant in respects specified. The defendant denies the material allegations of the complaint, and, in its answer, alleges three grounds of affirmative defence—first, that of contributory negligence on the part of the plaintiff; secondly, negligence of a fellow-servant of the plaintiff; and thirdly, that the plaintiff, for a valuable consideration, released the defendant from liability to him for the injuries complained of, and damages as consequence thereof. The answer alleges "new matter constituting a defence by way of avoidance," or rather three distinct matters of defence by way of avoidance. The plaintiff, in his reply, first, simply denies that the matters so alleged are true. He further replies, as matter of inducement, that the

defendant owed him about the sum of fifty dollars. He then, in that connection, further replies and alleges, specifically—

"3. That said alleged release was obtained by the agent of the defendant company a few days after the said injuries were received, and while plaintiff was suffering great bodily pain therefrom, mental anxiety by reason thereof, and was unable to comprehend the meaning or effects of the same.

"4. That plaintiff was, at the time the alleged release was procured, and is now, an ignorant, illiterate colored person, unable to read or write, and did not understand or comprehend the purport of said alleged release."

He thus replies and alleges, as to the release relied upon by the defendant, new matter, equitable in its nature, not inconsistent with the complaint, and demands judgment that he be relieved as to the same for the purposes of this action, and it be declared and adjudged inoperative and void. The defendant might allege such matters of defence, whether legal or equitable in their nature, and so the plaintiff might make reply. *The Code*, §§ 243, 244, 245, 248. The matter, equitable in its nature, alleged in the reply, is not so fully, specifically and formally alleged as it might and ought to be, but the Court can see the substance and purpose of it, and, therefore, the reply must be upheld as a pleading. All matters equitable in their nature should be alleged in the pleadings with such reasonable fullness and particularity as to the constituent facts as will enable the Court to see clearly the character of the equity alleged, the purpose of the pleading and the issues raised. Under the present method of civil procedure, the parties to an action may allege their causes of action, and their rights in and about them, in the same action, whether the same be legal or equitable, or both, and the Court must administer such rights in the action where the same are pertinent, and to administer them is necessary to a proper determination of it. The constituent facts of an

alleged equity, whether the same be the chief cause of action, or be alleged as a pertinent incident in the course of the pleadings, in some aspect of the case, are sometimes voluminous and complicated. In such cases, the essential facts— not such as are immaterial and merely evidential—should be so alleged as to present the equity clearly and with a view to facilitate the trial of necessary issues of fact when raised. This is necessary in order to avoid a multitude of issues and to prevent confusion. In some cases—particularly in some equity cases—it would facilitate the trial and disposition of them if the Court would "direct the jury to find a special verdict, in writing, upon all or any of the issues," or if it would "instruct them, if they find a general verdict, to find upon particular questions of fact, to be stated in writing," and to make a "written finding thereon," as allowed by the statute (*The Code*, § 409). *Porter* v. *Railroad,* 97 N. C., 66.

Now, in this case, the complaint and answer directly raised the issue of fact as to the alleged negligence of the defendant. The pleadings, and particularly the answer and the reply, raised—first, the issue of fact as to the contributory negligence of the plaintiff; secondly, that as to the negligence of a fellow-servant; thirdly, that as to the alleged release of the plaintiff executed to the defendant; fourthly, that raised by the allegation of the reply, that the release mentioned was obtained by the defendant from the plaintiff shortly after he sustained the injuries complained of, while he was suffering great bodily pain and mental anxiety occasioned thereby, was unable to comprehend the meaning and effect of the release, and that he was ignorant, illiterate, unable to read or write, and did not understand or comprehend the purport of the same.

The Court, plainly, properly submitted the first four issues directly, and a fifth one as to damages. This the defendant's counsel concedes, but he insists that the second, third and fourth issues submitted were not raised by the

pleadings—that they were immaterial, confusing and inconsistent with the first issue submitted, and, therefore, absurd. We cannot treat these objections as well founded.

The reply to the answer does not expressly allege that the release in question was obtained from the plaintiff by the fraud of the defendant or its agents, but it does allege informally, in substance and effect, that it was obtained by the defendant under such circumstances of unfairness, undue advantage, inadequacy of consideration, suddenness, while the plaintiff was suffering great pain and mental anxiety, while he was ignorant and unable to comprehend the meaning and purpose of such an instrument—under such circumstances of mistake and surprise as that the Court, in the exercise of its equitable jurisdiction, ought and will not allow the defendant to plead and use it to the disadvantage of the plaintiff in this action. The reply as to the release certainly alleges such pertinent matter, equitable in its nature in appropriate connection, as will induce the Court to entertain and allow the same to be litigated and determined in the orderly course of action. The matter so alleged is fit and appropriate to be pleaded, and all issues, whether of law or fact, raised concerning the same must be tried and determined in the regular course of procedure.

The defendant did not, in any respect, demur to the reply to the answer. It was treated by the parties and by the Court as if the allegations therein were denied, and thus serious issues of fact were raised to be tried by the jury. The plaintiff had the right to have these issues tried. Perhaps the Court might have framed a single issue of fact as to the validity or invalidity of the release, but it submitted three issues in that respect, with the view and for the purpose of thus ascertaining the leading distinctive facts underlying the alleged equity. While the pleadings did not logically raise the three issues as submitted, the three, in effect, were so framed as to settle the material facts—the issue of fact to

be passed upon by the jury. The issues submitted were plain; the jury could understand them; they were not confusing, nor did they, in any respect, because there were three, prejudice the defendant. It does not so appear from the record, nor can we see that it did necessarily. Regularly and ordinarily, the issues of fact simply as raised by the pleadings should be submitted to the jury, but that they are subdivided intelligibly will not be ground for a *venire de novo* if the party complaining was not thereby prejudiced. The first exception cannot, therefore, be sustained.

The issues proposed by the defendant were substantially, in all material respects, embraced in the issues one, five, six, seven and eight submitted. That was sufficient.

The contradiction and absurdity in the pleading and issues, in respect to the release complained of, did not at all affect the substance of the pleading or the issues. Under the present method of procedure and pleading a party may allege that he did not execute a deed or other instrument, and further allege matter in avoidance of the same. It may be that, under the circumstances, the plaintiff did not remember or believe that he executed the release. But if he did, he might, nevertheless, further allege any matter in avoidance of it. Hence, the second exception cannot be sustained.

The facts going to prove the alleged negligence of the defendant, and bearing upon the fifth issue submitted, were not controverted. Accepting them as true, we cannot hesitate to hold that there was negligence as alleged. The mass of stone just above and near to the railroad track on which trains moved was in condition, as to situation, to slide or fall upon the track, was dangerous, was a standing menace, and was allowed to be so for several years, and the agents of the defendant knew the fact. The stone might, ought to, have been removed when the road was constructed. The fact that the defendant kept a "track-walker" whose duty it was to examine and see, just after a

train had passed the dangerous point, whether rock had fallen or was about to fall, cannot excuse the defendant. It was its serious duty to avert such danger, because it was obvious, could be seen and ought to have been removed. It is not sufficient to be simply cautionary when a manifest danger exists that may and ought to be removed. Hence, the defendant was not entitled to have the first special instruction it asked the Court to give.

Nor was it entitled to have the second one asked and refused. There was no evidence to prove that the plaintiff knew of the dangerous condition of the stone that fell on the track and caused the disaster in which he suffered injury. Nor was this an ordinary hazard, certainly as to the plaintiff, of which he is presumed to take knowledge. He was a brakeman; he did service on trains that passed rapidly by the dangerous point at intervals, and the evidence went to prove that at his place of duty he might not observe the danger, as he would be "on a level with the rock." The plaintiff was about his duty on the moving train; he was unconscious of the danger as the train approached it; he did not do anything to contribute to the injury he sustained or the negligence of the defendant that gave rise to it. In no aspect of the matter does it so appear.

Nor was the injury sustained by the plaintiff attributable at all, so far as appears, to the neglect of a fellow-servant. It is said the "track-man" was a fellow-servant and he failed to do his duty. It does not so appear. It appears it was the duty of the track-man to visit the dangerous place just before and just after trains passed the same. It does not appear that he did or did not. It may be that the weight of the freight train, and the jar occasioned by it, suddenly precipitated the fall of the stone. But, granting that the "track-man" failed to discharge his duty and to give notice, there was the greater neglect of the defendant, and the injury was occasioned by that neglect. The defend-

ant was bound to remove so great a danger. If it had done so at the first, as it did at last, and after the disaster, the plaintiff had not suffered the injury complained of.

We are of opinion that there was evidence of mistake, surprise and undue advantage taken of the plaintiff, under such circumstances as ought to avoid the release relied upon by the defendant, if the allegations of the reply were true, as the jury found them to be. The release was executed within a few days after the plaintiff sustained the injuries, at the instance of the defendant through its agent, while he was suffering great bodily pain and mental anxiety occasioned by such injuries, when he was unable to comprehend the meaning and effects of the release. He was ignorant, unable to write, and did not understand or comprehend the purport of such instrument. The defendant owed him wages, and he believed, when he executed the release, that he was giving a receipt for a part of the sum due him for wages. The jury so find by their verdict in response to the pertinent issues submited to them, except in a single respect. The evidence tended to prove that the defendant's agent at Hot Springs, within a few days after the plaintiff sustained the injury, sent him on its road to Salisbury, a distance of one hundred and fifty miles or more, where, at the office of the defendant, its agent took the release in question, paying as consideration therefor thirty dollars. The evidence also tended to show that the damages so sustained were greatly in excess of that sum. There was evidence tending to prove the substance of the allegations of the reply in respect to the release. It was in evidence for the defendant that its agent took the release. He testified that the release — its purpose — was explained to the plaintiff. It did not appear that the plaintiff had counsel or any friend to advise him other than the agent of the defendant.

Granting that there was no positive fraud on the part of the defendant or its agents (none was alleged), there was

evidence to prove, and the jury found, under appropriate instructions from the Court not objected to, that the plaintiff executed the release by mistake, occasioned by his ignorance, physical pain, mental anxiety and lack of capacity, under the circumstances, to understand or comprehend the nature and purpose of such release.

The Court of Equity will grant relief where only the party complaining makes mistake, when the facts and circumstances give rise to the presumption that there has been some undue influence, misapprehension, imposition, mental imbecility, surprise, or confidence abused. Mere ignorance, mere inadequacy of consideration, mere weakness of mind, mere mistake on the part of one party, will not entitle that party to relief. But it is otherwise when there is a combination of such things to prejudice the party. In such case, in good faith and fair dealing, the adverse party ought to see and know, and must be presumed to know, that the complaining party was not fit or in such mental condition as to bind himself by contract. A Court of Equity will interfere when called upon to relieve a party against his mistake, made under a combination of such adverse circumstances as certainly destroy his capacity to know the nature of the contract or engagement to which he becomes a party. *Buffalow* v. *Buffalow,* 2 Dev. & Bat. Eq., 241; *Futrill* v. *Futrill,* 5 Jones' Eq., 61; *Barnes* v. *Ward,* Busb. Eq., 93; Story's Eq. Jur., §§ 119, 120, 134, 251; Smith's Man. Eq., 45.

As we have said, the plaintiff does not allege, in the reply, positive fraud of the defendant, nor mutual mistake, nor undue influence, nor simply weakness of understanding. He alleges such a combination of facts and circumstances, and produces evidence to prove the same, as show such mistake and surprise on his part as entitles him to have the release declared inoperative and void. So that the special instructions asked for, other than those particularly referred to above, have no material pertinency.

Judgment affirmed.