## HARLEY *v.* RIVERSIDE MILLS.

One who, for valuable considerations, including the payment to him of a given sum of money, has released another from all further liability for personal injuries sustained by the releaser, can not, even upon legal grounds, obtain a rescission of such contract of release, and recover upon the original cause of action, without first restoring, or offering to restore, to the releasee what he paid for such release.

Submitted June 6,—Decided August 9, 1907.

Action for damages. Before Judge Hammond. Richmond superior court. October 15, 1906.

*B. B. McCowen,* for plaintiff.

*C. H. & R. S. Cohen,* for defendant.

Fish, C. J.  Harry H. Harley brought an action against the Riverside Mills, for damages from personal injuries alleged to have been sustained by him on February 8, 1902, by reason of the negligence of the defendant in furnishing to the plaintiff, its employee, a machine with which to perform the work assigned to him, which was defective and not suited to the purpose for which it was used.  The petition was dismissed on demurrer, and the plaintiff excepted.  In sustaining the demurrer the court passed the following order: "It appearing that petitioner had received a certain sum from defendant's company in payment of the damages received, and had brought suit against said defendant company after having signed a release without restoring to said company the amount received in settlement, it is ordered, that the demurrer filed in said case be sustained."  So much of the petition as bears on the question presented was as follows: "That defendant corporation recognized its obligation to petitioner, and through its superintendent, James H. Vivian, obtained a release for said liability from petitioner on or about the 18th of Feby., 1902, under promise to take petitioner back in their employment as soon as he was able to knock about at his half regular salary of $1.40 per day until well, and then to give petitioner employment at $1.40 per day as long as he should live."  In connection with this allegation, there was attached to the petition as an exhibit a copy of the release contract, executed by plaintiff on February 18, 1902, in the presence of two witnesses, one of them a notary public.  This contract, after reciting that the plaintiff on February 8, 1902, had the misfortune to lose a portion of his left hand on

a planer in the defendant's shop, contained the following language: "Whereas the Riverside Mills have agreed to pay all doctors' bills in connection with said accident and also pay me half time, namely seventy cents per day for each working day, until I am discharged by their physician, now, therefore, this indenture witnesseth, that in consideration of the payment of all doctors' bills in connection with said accident, and the further payment of half time to me by the Riverside Mills, until I am discharged by their physician, the receipt of first payment of which half time is hereby acknowledged, namely $4.20 for six days lost time week ending Feb. 15, 1902, I have remised, released, and forever discharged, and by these presents do  .  .  remise, release, and forever discharge the said Riverside Mills  .  .  of and from all  .  .  . cause and causes of action, suits, debts,  .  . · damages,  .  .  . claims and demands whatsoever in law and equity, which against the said Riverside Mills I ever had, now have, or which I  .  .  ., may have,  .  .  by reason of the accident which happened to me on or about Feby. 8, 1902, as aforesaid."

The petition further alleged: "That in recognition of said agreement [the alleged agreement made with plaintiff by defendant's superintendent], petitioner was permitted to return to work, and received his half pay, until about well, when petitioner, without reasonable cause or fault on his part, was discharged in violation of said agreement, thereby rendering the release signed by petitioner null and void." There was a prayer that the release be declared of no effect, and that plaintiff recover a stated amount of damages on account of his injuries. Counsel for plaintiff in error contends, in his brief: That the acknowledgment of "having received $4.20 for six days lost time," contained in the contract of release, "should [not] be construed into an acknowledgment that he had not earned it, when it entered into the general average of his pay while convalescent. The release does not say for lost time to date, but only for time lost to the 15th, when the contract was entered into on the 18th, and after he had, according to the petition, taken up his light duties at the mill. The idea was to average his pay while disabled at 70 cents per day including the time lost when he earned nothing, to the time when well and earning almost full pay, the $4.20 received being for salary and not in settlement of his claim for damages." The essential weak-

ness of this contention consists in the fact that counsel seek to construe the release contract in connection with allegations as to a promise made by defendant's superintendent, on or about the time that this contract was signed, which promise does not appear in the written instrument. It is, perhaps, not material, but we may say, in passing, that the statement that the contract was entered into after the plaintiff, "according to the petition, had taken up his light duties at the mill," is not supported by the petition, as it fails to state when the plaintiff "was permitted to return to work, and received his half pay." This contention of counsel as to the construction to be placed upon the contract of release is not supported by the language of that contract, which states that the $4.20 received by the plaintiff was for six days lost time during the week ending February 15, 1902, and in consideration of the payment of this sum of money and the assumption of the other specified obligations by the defendant, the plaintiff executed the release. Nor does it appear from the contract of release that it was obtained by defendant under its promise to take plaintiff back into its employment, as soon as he was able to "knock about," at half his regular wages, until well, and then to give him employment for the balance of his life at $1.40 cents per day. And, of course, such parol promise or agreement, even if made contemporaneously with the execution of the written contract, by defendant's superintendent, or any one else representing it, could not be added to the written contract of release. The petition, taken in connection with the release contract, which is made a part thereof, when properly construed, is an effort to rescind such contract, for no legal reason, and without restoring, or offering to restore to defendant, the other party to the contract, the money plaintiff had received by virtue of the same; and then, with this contract out of the way, to recover damages for the injuries sustained by plaintiff. Even if the plaintiff had, by the allegations of his petition, shown a legal reason for a rescission of the contract, such as fraud in its procurement, he could not have obtained a rescission, without refunding or offering to refund the money which he had received thereunder. *East Tenn., Va. & Ga. Ry. Co.* v. *Hayes,* 83 *Ga.* 558; *Western & Atlantic R. Co.* v. *Burke,* 97 *Ga.* 560; *Strodder* v. *Southern Granite Co.,* 94 *Ga.* 626, s. c. 99 *Ga.* 596; *Bowden* v.

*Achor, 95 Ga. 243.* It follows that there was no error in sustaining the demurrer to the petition.

*Judgment affirmed. All the Justices concur.*