R. T. WEST v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 3 November, 1909.)

1. **Issues Unnecessary—Negligence—One Damage.**

   When there is allegation and evidence that defendant negligently injured plaintiff by the derailment of its passenger train and the immediate running into it of another passenger train, the plaintiff can only recover one damage caused by the negligence of the defendant, and two issues as to damage are unnecessary.

2. **Contracts Voidable—Insanity—Notice—Advantage.**

   When a party to a contract has not been judicially found to have been of unsound mind, but makes it a defense in an action involving the validity of his agreement, the contract is not void, but voidable, and will not be set aside where the other party had no notice of the infirmity and has derived no inequitable advantage.

3. **Same—Damages—Release.**

   Where the plaintiff is found by the jury to have executed a release to defendant, when the former was *non compos mentis*, for damages arising from an injury negligently inflicted by the latter, the courts will not set it aside in the absence of a finding that the defendant was aware of his incapacity at the time of the release, or that its execution was induced by its fraud or misrepresentations.

4. **Same — Subsequent Sanity — Repudiation — Consideration — Restoration.**

   When plaintiff has executed a release to defendant for damages claimed in his action, and seeks to avoid it upon the ground of insanity, he is barred by his failure, within a reasonable time after being restored to his right mind, to repudiate the contract and restore the consideration he has received.

APPEAL from *Biggs, J.,* February Term, 1909, of UNION.

The action was brought to recover damages for injuries alleged to have been sustained in a wreck on defendant's road. The defendant pleaded a release, and in reply the plaintiff, upon the facts stated in his replication, prayed relief that the release be declared void.

The wreck occurred 9 September, 1904. The release was exe-

cuted 9 October, 1905, and this action was commenced 24 June, 1907. The court submitted, without exception, these issues:

1. "Did the plaintiff, at the time of receiving the voucher for $1,511.61, execute the alleged release, dated 9 October, 1905, set up in the answer?" Answer: "Yes."

2. "Did the plaintiff, at the time of executing the said release, have sufficient mental capacity to understand the nature and effect of said release?" Answer: "No."

3. "Did the plaintiff, at the time of endorsing and collecting the said voucher for $1,511.61, have sufficient mental capacity to understand the nature and effect of said voucher transaction?" Answer: "No."

4. "Was the plaintiff, R. T. West, injured by the negligence of the defendants, as alleged in that part of the complaint relating to the injuries alleged to have been caused by the derailment of the passenger train?" Answer: "Yes."

5. "Was the plaintiff, R. T. West, injured by the negligence of the defendants, as alleged in that part of the complaint relating to the injuries alleged to have been caused by the second train?" Answer: "Yes."

6. "What damage, if any, is plaintiff, R. T. West, entitled to recover for injuries caused by the derailment of the passenger train, as alleged in the complaint? What damage, if any, is the plaintiff, R. T. West, entitled to recover for injuries caused by the second train, as alleged in the complaint?" Answer: "$7,000."

From the judgment rendered the defendant appealed.

*Williams & Lemmond* and *A. M. Stack* for plaintiff.
*Burwell & Cansler, J. D. Shaw* and *Adams, Jerome & Armfield* for defendant.

BROWN, J. The plaintiff, conductor on defendant's train, was injured in a wreck which occurred at Whisnant's trestle, on the night of 9 September, 1904. The wreck was caused by the train being derailed at the trestle, and in about three minutes another passenger train ran into it. As we understand the record, the defendant does not contest its original liability to plaintiff for whatever injuries he sustained by reason of the wreck, but alleges that it has settled with the plaintiff therefor, and pleads a release in full. The defendant replies to this answer, and avers that he executed the paper writing set up in the answer, but that it was not intended to release plaintiff from the injuries sustained at Whisnant's trestle; secondly, that said release was obtained by fraud upon the part of defendant; and,

thirdly, that at the time he executed it he was *non compos mentis* and did not have sufficient mental capacity.

Upon the rendition of the verdict the judge set aside the fifth and sixth issues as unnecessary, and rendered judgment in favor of plaintiff upon the findings upon the other issues.

We agree with his Honor in setting those two issues aside as unnecessary.

If the plaintiff is entitled to recover at all, he is entitled to recover one damage for whatever injuries he sustained in that wreck caused by the derailment of his own train and by the immediate running into it of another train.

We also agree with his Honor that there is no evidence whatever in this case which will justify a court or jury in setting aside the release on the ground of mistake, fraud or misrepresentation.

The undisputed evidence, consisting of the admitted letters of the plaintiff (many of them introduced by him), shows that the release was executed after a voluminous correspondence on the subject of the compromise on account of plaintiff's injuries, extending over a period of twelve months, between plaintiff and defendant's claim adjuster, Stanley.

In one of these letters, introduced by him, the plaintiff says: "Referring to your letter of 8 December, 1904, relative to the injuries sustained by me in the accident at Whisnant's trestle, I beg to say that I have carefully considered your proposition of adjustment as stated therein. Without discussing the matter of the company's legal liability, I beg to say that I am willing to accept the proposition as submitted by you." The release was executed at Portsmouth and the sum of $1,500 paid the plaintiff, and he seems to have rested contented therewith for nearly two years before the institution of this action. The plaintiff's own account of what took place between him and Stanley at Portsmouth does not disclose any attempt to constrain him by duress or to overreach him by fraud and misrepresentation.

The compromise seems to have been arrived at after an elaborate correspondence, which discloses to any unbiased mind that at the time he wrote the letters plaintiff had an intelligent comprehension of his rights.

There are a class of cases where releases of this character have been set aside and the plaintiff permitted to recover, notwithstanding them. *Hayes v. Railroad,* 143 N. C., 125, and *Bean v. Railway,* 107 N. C., 731, and others we might name. But those decisions are all based upon the ground of fraud, undue advantage, misrepresentation, in some instances combined with weak-

ness of mind and body.  As said in *Bean's case* by *Merrimon, C. J.,* "The court of equity will grant relief where only the party complaining makes mistake, when the facts and circumstances give rise to the presumption that there has been undue influence, imposition, mental imbecility, surprise, or confidence abused. Mere ignorance, mere inadequacy of consideration, mere weakness of mind, mere mistake on the part of one party, will not entitle that party to relief.  But it is otherwise when there is a combination of such things to prejudice the party." *Buffalow v. Buffalow,* 22 N. C., 241; Story's Eq., secs. 119, 120, 134, 251; *Sprinkle v. Wellborn,* 140 N. C., 163.

In *Hayes' case* the release was set aside for fraud in the *factum,* the paper writing having been falsely read to plaintiff, an illiterate person at the time of its execution.  There is no suggestion of anything of that sort in this case.

So, upon the record before us, in the absence of any finding of fraud, the plaintiff's case appears to us to rest solely upon the finding of the jury that at the time he signed the release plaintiff did not have mental capacity sufficient to execute it.

This finding, in connection with those upon the remaining issues, we do not think, according to well-settled principles, warrants the judgment rendered.

Eliminating all fraud, this is a case where the plaintiff asks a court of equity to relieve him from the consequences of a contract he made with the other party to it, upon the sole ground that at the time he executed it he did not have sufficient mental capacity and was a person of insane mind.

The well-established rule is that the mere fact that one of the parties to the contract is of unsound mind (he not having been found to be a lunatic by judicial proceedings) does not render the contract void, but, at most, only voidable, and is no ground for setting it aside, where the other party had no notice of the insanity and derived no inequitable advantage from it.  *Carr v. Holliday,* 21 N. C., 344; *Rhoades v. Fuller* (Mo.), 40 S. W., 760: *Jamison v. Culligan,* 52 S. W., 225; *Schaps v. Lehner,* 35 N. W., 911 (Minn.); *Brown v. Cory* (Kan.), 59 Pac., 1097; *Coburn v. Raymond,* 57 Atl., 117; *Riggans v. Green,* 80 N. C., 236; 1 Chitt. on Cont., 191; Story Eq., secs. 227, 228.  This learned jurist says: "The ground upon which courts of equity now interfere to set aside the contracts and other acts, however solemn, of persons who are idiots, lunatics and otherwise *non compos mentis,* is fraud.  Such persons being incapable in point of capacity to enter into any valid contract or to do any valid act, every person dealing with them, *knowing their incapacity,* is deemed to perpetrate a meditated fraud upon them and their rights."

To the same effect is Adams Eq., 183, and cases there cited.

In a full and valuable discussion of this subject in the leading case of *Odom v. Riddick,* 104 N. C., 521, the present Chief Justice says: "The great teachers of English law say that persons of non-sane memory are not totally disabled to convey or purchase, but only *sub modo.* Their conveyances are voidable, but not void. 2 Black., 291; 2 Kent Com., 451. The deed of a person of unsound mind, not under guardianship, conveys the seizin. *Whaite v. Maxwell,* 5 Peck., 217; *Crouse v. Holman,* 31 N. C., 30, and cases cited."

In the same opinion, commenting upon the above quotation from Story, *Judge Clark* says: "This places the doctrine upon an intelligible basis and delivers the courts from the evident injustice and insurmountable inconvenience of declaring that all contracts made with one *apparently sane,* but who proves to have been insane, void *ab initio* for want of a consenting mind."

After reviewing many decided cases, he further says (p. 523): "It is clear from these authorities that the conveyances of an insane person, not previously declared insane, are voidable merely, and not void; that the right to set them aside is based upon the ground of fraud, and that the Court will not usually interfere unless there has been fraud *or a knowledge of the insanity* by the other party, and then will place the parties *in statu quo.*" There being no finding by the jury that at the time of the execution of the release defendant's agent had any knowledge of plaintiff's alleged insanity, is there anything in this record upon which the Court can declare the defendant to be fixed with such knowledge as matter of law?

All of the correspondence between plaintiff and Stanley, which culminated in the settlement and release, has been put in evidence by one side or the other. In it there are some thirty-odd letters written by plaintiff to Stanley, the defendant's adjuster of claims, beginning 23 November, 1904, in a written demand by plaintiff for a settlement "on account of his injuries," and ending with a letter of 7 October, 1905. In none of them is there anything to excite even a suspicion of plaintiff's sanity. The last letter plaintiff wrote before going to Portsmouth to get the controversy settled speaks for itself:

"MONROE, N. C., 7 October, 1905.
"MR. W. L. STANLEY, *Claim Attorney,*
*Portsmouth, Va.*

"DEAR SIR:—Referring to your letter dated 22 June, 1905, file 4619, relative to the manner in which you were desirous to settle with me on account of personal injuries sustained in above wreck, beg to advise that I am now and have been able since 1 October, 1905, to resume my duties as passenger conductor.

WEST v. RAILROAD.

"Dr. Ashcraft also advises that I am now able to go on any witness stand when and wherever you need me.    Please arrange an early date for me to go to Portsmouth and get this matter straightened up, as I am desirous of resuming my duties at once. Thanking you for your prompt attention, I am,

Yours truly,          R. T. WEST, *Conductor.*"

Could Stanley or anyone else possibly divine from this letter that the writer, who traveled to Portsmouth and settled for his injuries and signed the release and received the $1,500 two days later, was a person of unsound mind, without mental capacity to make a contract?

The entire correspondence is conducted by plaintiff with such intelligence on its face as to forbid rather than to warrant any such deduction.

There is not only no finding that the defendant or its agent had knowledge of plaintiff's alleged mental incapacity, but nothing whatever in the record to support such an allegation, and, as we have shown, the plaintiff must show this, as well as his mental incapacity, in order to avoid his contract.    There being no contention that the release was executed by the mutual mistake of both parties, and no finding that its execution was brought about by the fraud and misrepresentation of the defendant's agent, it was essential to have a finding that at the time of its execution defendant's agent had knowledge of plaintiff's alleged insanity.

In the absence of such finding, the judgment cannot be sustained.

The defendant requested his Honor to rule that plaintiff could not recover, because, after being restored to sanity, he failed to repudiate the contract and to return to defendant the $1,500 he had received.

As this case is to be tried again, it is well to pass on this.    This rule does not apply where a release is set aside upon the ground of fraud, although the party injured is made to account for what has been paid him.    *Hayes case* and *Bean case, supra.*

But in the case at bar, where there is no element of fraud, this rule does apply, as is held by all the authorities.    In an elaborate opinion the Supreme Court of Minnesota, discussing the subject, says: "But, conceding plaintiff's mental incapacity on that day, there is an insuperable obstacle to his recovery in the fact that he has never rescinded nor offered to rescind the settlement, but still retains the consideration and has never offered to return it.    .    .    .    Upon recovering his usual mental condition, it was his duty to elect promptly—that is, within a

reasonable time—whether he would affirm or disaffirm, and if he elected to do the latter it was his duty to restore or offer to restore what he had received, so as to place the parties *in statu. quo.* He cannot affirm in part and reject in part. He cannot escape the burdens of the contract and retain its benefits. Of course, we have no reference to cases where the other party has been guilty of fraud or bad faith in procuring the contract and the insane person has lost or squandered the consideration before he regained his mental capacity." See, also, Clark on Cont., p. 185; *Oct v. Railway* (Mo.), 31 S. W., 962, and cases cited; *Strodder v. Granite Co.* (Ga.), 27 S. E. Rep., 174; *Harley v. Riverside Mills,* 58 S. E. Rep., 711; *Drohan v. Railway* (Mass.), 38 N. E., 1116; *Kelly v. Railroad* (Ala.), 45 So., 906.

For the reason given, we are of opinion that his Honor erred in refusing defendant's motion for a new trial.

