17478

Robert H. ALDERMAN, Appellant, v. M. L. BIVIN and C. W. Meredith, individually and as co-partners in trade, doing business under the name and style of Florence Truck Terminal, Respondents

(106 S. E. (2d) 385)

*Messrs. Wm. H. Smith, Jr.,* and *John L. McGowan,* of Florence, *for Appellant,*

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, *for Respondents,*

December 8, 1958.

Moss, Justice.

Robert H. Alderman, the appellant herein, in his complaint alleges that he was the owner of two Dodge trucks and that he did, on December 13, 1957, leave the said trucks with M. L. Bivin and C. W. Meredith, partners, trading under the name of Florence Truck Terminal, the respondents herein, for the purpose of having them provide the said trucks with an anti-freeze solution. It is then alleged that the respondents supplied one of said trucks with an anti-freeze solution but that no such solution was provided for the other

truck. The complaint then alleges than an extremely low temperature occurred in the City of Florence on December 13, 1957, and the water in the radiator of the Dodge truck which had not been provided with the anti-freeze solution froze, resulting in damage to the engine and allied parts thereof. The complaint alleges that because of the freezing of the said truck it was taken by the appellant to Hyman Motors, Inc., for necessary repairs. It is also alleged that Hyman Motors, Inc., advised the appellant that the only damage to the motor from the freeze was blown gaskets, and when these were replaced the motor would be as good as formerly. These repairs were made at a cost of $30.06, and the statement for replacing the gaskets was submitted to the respondents, who, in turn, submitted the statement to their insurance carrier.

It is further alleged that Great Central Insurance Company, the insurer for respondents, paid to the appellant the sum of $30.06 for which appellant signed and delivered a release and discharge in favor of the respondents "of all claims arising as a result of the freezing above set forth."

The complaint likewise alleges that the appellant believed that the only damage to the said Dodge truck consisted of the blown gaskets, and the respondents likewise believed that the said truck would not suffer the complete loss of its engine, and that at the time of said settlement none of the parties knew the conditions that would eventually necessitate the replacement of the entire engine in said truck. It is then alleged that the jarties reached an agreement of settlement acting on a common but mistaken belief that the engine block in the said Dodge truck was not damaged as a result of the freeze above set forth, and without knowledge of the facts and in ignorance of the true condition of said engine. It is alleged that some time after the settlement, the said truck being subjected to normal usage and high engine temperatures and pressures incident thereto, a breakage came in the engine block and the freezing above set forth was the exclusive cause thereof.

The complaint asserts that neither the appellant nor the respondents nor the insurance carrier intended to pay or receive payment for breakage and replacement of the engine in the said Dodge truck, and neither of them knew or believed, or had reason to know that any such damage could or would arise from said freezing. The appellant asserts that he would not have accepted the payment and signed the release had he known the facts as to the true condition of the engine in said truck. The complaint then alleges damage in the amount of $475.00, being the cost of the engine replacement, and for the inoperation of the truck for a period of three days. It is asserted that under a "mutual mistake of fact" that Great Central Insurance Company, acting for the respondents, paid to the appellant the sum of $30.06, for which appellant delivered a release and discharge in favor of the respondents. The prayer of the complaint is that the said release be rescinded and declared null and void by reason of mutual mistake of fact under which it was executed and delivered, and that the appellant have judgment for the sum of $475.00, the damages alleged to have been sustained by the appellant.

The respondents filed a demurrer on the ground that the complaint states insufficient facts to constitute a cause of action, the complaint showing on its face that the appellant released the respondents from all claims arising out of the occurrence alleged in the complaint.

The demurrer was heard by the Honorable G. Badger Baker, Judge of the Twelfth Circuit. Thereafter, he filed an order sustaining the demurrer and ruling that the allegations of mutual mistake of fact constituted only conclusions of fact which were not admitted by the demurrer. He also held that the allegations of the complaint showed that whatever mistake was made was that of the appellant or his agent or representative rather than by the respondents or their agent or representative. He likewise held that the allegations of the complaint do not show a mutual mistake of fact which would entitle the appellant to a rescission of the release.

The exceptions of the appellant raise the questions, (1) Was the court in error in holding the allegations of mutual mistake in the complaint constitute nothing more than conclusions of fact which were not admitted by the demurrer? (2) Did the Court err in holding that the allegations of the complaint show that whatever mistake was made was that of the appellant or his agent rather than by the respondents or their agent, and that the allegations of the complaint show no mutual mistake of fact?

In the recent case of *Roper v. South Carolina Tax Commission*, 231 S. C. 587, 99 S. E. (2d) 377, 378, we said:

"It is elementary that in passing upon a demurrer, the Court is limited to a consideration of the pleadings under attack, all of the factual allegations whereof that are properly pleaded are for the purpose of such consideration deemed admitted. *Spell v. Traxler*, 229 S. C. 466, 93 S. E. (2d) 601. If a complaint states any cause of action, a demurrer should not be sustained. *Fleming v. Pioneer Life Ins. Co.*, 178 S. C. 226, 182 S. E. 154. It has also been held that when a fact is pleaded, whatever inferences of law or conclusions of fact may properly arise from it, are to be regarded as embraced in such averment. *Bryant v. Smith*, 187 S. C. 453, 198 S. E. 20."

In the case of *Oliveros v. Henderson*, 116 S. C. 77, 106 S. E. 855, 857, this Court said:

"The demurrers admit the facts alleged in the complaint, but do not admit the inferences drawn by plaintiffs from such facts, and it is for the court to determine as to whether or not such inferences are justifiable; * * *"

In the case of *Dahlberg v. Brown*, 198 S. C. 1, 16 S. E. (2d) 284, an action was brought by a certified public accountant against the administratrix of an estate for services rendered to the estate. A demurrer interposed to the complaint which alleged that the defendant had gone through the form of being relieved of her duties as Administratrix, which form was a nullity on the ground that the defendant

secured such relief while knowingly leaving unpaid indebtedness of the estate, did not admit the allegation in question as a demurrer admits facts but not conclusions of law or fact, nor inferences drawn from such facts.

In the case of *Henderson v. McMaster,* 104 S. C. 268, 88 S. E. 645, where it was alleged that by reason of the enactment of a statute a foreign insurance company was compelled to withdraw from the state, such an allegation was a conclusion of fact and was not admitted by demurrer.

The complaint in this action alleges that the settlement made by the appellant with the respondents and their insurance carrier was made under a "mutual mistake of fact." These allegations constitute nothing more than conclusions of fact, which are not admitted by the demurrer.

In the case of *McGregor v. State Company,* 114 S. C. 48, 103 S. E. 84, 85, which was an action for libel, it was alleged in the complaint that the publication was "libelous." A demurrer to the complaint was sustained. The Court, in affirming the judgment of the lower Court, said:

"* * * The further allegation of the complaint is that the publication was 'libelous'; but so much is the statement of a legal conclusion, and not of a fact. * * *"

We conclude, as did the Circuit Judge, that the filing of a demurrer by the respondents did not admit that there was a mutual mistake of fact, because this allegation constitutes nothing more than a conclusion of fact which is not admitted by the demurrer.

We come now to the consideration of the second question. Do the allegations of the complaint show a mutual mistake of fact? We recur again to the facts alleged in the complaint. The complaint, in brief, was for damages due to the alleged freezing of a truck motor belonging to the appellant, in which the respondents failed to put an anti-freeze solution. The complaint alleges that the appellant accepted the sum of $30.06 in full settlement of all claims

arising as a result of such freezing. The appellant accepted this sum after his own garageman had advised him that the only damage to the motor of the truck consisted of blown gaskets. It is conclusive from the complaint that any mistake that was made in determining the damage to the appellant's Dodge truck was made by Hyman Motors, Inc., to whom the appellant had taken his truck for the purpose of ascertaining the damage incurred by reason of the failure of the respondents to properly put an anti-freeze solution in said truck. When the appellant took the truck to his garageman he thereby created such garageman his agent or representative to determine the amount of his damage. Thereafter, the appellant represented to the respondents, and their insurance carrier, what the damage was to said truck and the amount thereof. The respondents and their insurance carrier accepted the statement of the appellant and paid to him the amount of his claimed damage. At the time of such payment there was executed to the respondents by the appellant a full and complete release "of all claims arising as a result of the freezing above set forth." It thus appears to us that the facts stated in the appellant's complaint show a mistake on his part and was the result of the failure of his own agent and representative to discover the extent of the damage to his truck. This was a unilateral mistake of fact rather than a mutual one.

In 12 Am. Jur., Contracts, par. 133, at page 624, it is said:

"It has been declared that if, in the expression of the intention of one of the parties to an alleged contract, there is error, and that error is unknown to, and unsuspected by, the other party, that which was so expressed by the one party and agreed to by the other is a valid and binding contract, which the party not in error may enforce. In other words, a party to a contract cannot avoid it on the ground that he made a mistake where there has been no misrepresentation, there is no ambiguity in the terms of the contract, and the other contractor has no notice of such mistake and

acts in perfect good faith. A unilateral error, it has been said, does not avoid a contract. * * *"

The rule as to when a contract may be reformed or rescinded is fully set forth in *Jumper v. Queen Mab Lumber Co.,* 115 S. C. 452, 106 S. E. 473, 475, as follows:

"A contract may be reformed or rescinded, as the justice of the case may require, upon the ground of mistake, under these circumstances: (1) Where the mistake is mutual and is in reference to the facts, or supposed facts, upon which the contract is based; (2) where the mistake is mutual and consists in the omission or insertion of some material element affecting the subject-matter or the terms and stipulations of the contract, inconsistent with those of the parol agreement which necessarily preceded it; (3) where the mistake is not mutual, unilateral, and has been induced by the fraud, deceit, misrepresentation, concealment, or imposition in any form of the party opposed in interest to the reformation or rescission, without negligence on the part of the party claiming the right; (4) where the mistake is not mutual, but unilateral, and is accompanied by very strong and extraordinary circumstances, showing imbecility or something which would make it a great wrong to enforce the agreement, sustained by competent testimony of the clearest kind. *Kennerty v. Etiwan Phosphate Co.,* 21 S. C. 226, 53 Am. Rep. 669; *Forrester v. Moon,* 100 S. C. 157, 84 S. E. 532.

"It thus appears that both the first and second conditions, instances of mutual mistake, are independent of the elements of misrepresentation and concealment."

In the case of *Morris v. Seaboard Air-Line Railway,* 23 Ga. App. 554, 99 S. E. 133, it appears that one Morris brought suit against the railway on account of personal injuries received by him while a passenger on a train. The answer included a plea of accord and satisfaction based upon a written release executed by the plaintiff. The plaintiff admitted the execution of the release but sought to avoid its effect by alleging that it was executed under a mistake of fact and prayed for a cancellation thereof. He asserted that

at the time he executed the release he believed his injury was very slight and could not possibly result seriously to him, when in fact he was seriously, painfully and permanently hurt. The Georgia Court held that where one injured executes voluntarily, and upon a consideration adequate for the injury then known, a written release of all claim on account of his injury, he cannot, on subsequent discovery of injuries not known or suspected at the time of a settlement, obtain a cancellation of the release, on the ground of mistake, in the absence of fraud and undue influence, and recover for such injuries, although the compensation is wholly inadequate in view of the injuries actually inflicted.

In the case of *Houston & Texas Central Railroad Co. v. McCarty*, 94 Tex. 298, 60 S. W. 429, 53 L. R. A. 507, 86 Am. St. Rep. 854, it was held that a release in full by one injured by the negligence of a railroad company, upon a consideration adequate for the injury then known, cannot be set aside on the ground of mistake, upon the subsequent discovery of internal injuries not known or suspected at the time of the settlement, and a recovery permitted for such injury, although the compensation received is wholly inadequate in view of the injuries actually received.

In the case of *Cheek v. Southern R. Co.*, 214 N. C. 152, 198 S. E. 626, 628, an action was brought by the administratrix of an estate against the railway company for the death of plaintiff's intestate. The defendant pleaded a release executed by the deceased a short time after his injury. The plaintiff replied, pleading mistake and fraud in procurement of the release. The jury found as a fact that there was no fraud or misrepresentation. The Supreme Court of North Carolina, in granting a new trial on an appeal by the railway from a judgment in favor of the plaintiff, had this to say:

"A contract is the product of two or more consenting minds making a commitment about the same thing, binding on the parties at law or in equity. It is true that where there had been no meeting of the minds on the essentials of the treaty, no contract results. *Barber-Paschal Lumber Co. v.*

*Boushall,* 168 N. C. 501, 84 S. E. 800. But if we can conceive of such a situation—or, indeed, of a case of 'innocent misrepresentation'—that cannot be resolvable into mutual mistake. (*Great Northern R. Co. v. Fowler,* 9 Cir., 136 F. 118, 69 C. C. A. 106; *Seymour v. Chicago & N. W. R. Co.,* 181 Iowa 218, 164 N. W. 352, 357; Williston on Contracts, Rev. ed. Section 1551, and notes), still we can find no authority for the rescission of a contract for mistake at the instance of a party who has made none.

"If we confine its allusions to the plaintiff seeking relief from his own mistake, the instruction is still contrary to established precedent. This Court has not adopted the doctrine that a unilateral mistake—or mistake alone of the party seeking to avoid the contract—unaccompanied by fraud, imposition, undue influence, or like circumstances of oppression, is sufficient to avoid a contract. We do not undertake to catalogue the conditions which will give rise to equity jurisdiction. We simply say that the mere mistake of one party alone is not sufficient to avoid the contract. *Bean v. Western N. C. Railroad Co.,* 107 N. C. 731, 747, 12 S. E. 600. To have that effect, the mistake must be mutual. *Ebbs v. St. Louis Union Trust Co.,* 199 N. C. 242, 153 S. E. 858; *Hinsdale v. Phillips,* 199 N. C. 563, 572, 155 S. E. 238; *West v. Seaboard Air Line Railroad Co.,* 151 N. C. 231, 236, 65 S. E. 979; *White v. Richmond & D. Railroad Co.,* 110 N. C. 456, 461, 15 S. E. 197."

We think that our own case of *Lawton v. Charleston & Western C. R. Co.,* 91 S. C. 332, 74 S. E. 750, 751, is conclusive of the issue made in this case. In the *Lawton case* it appears that an action was brought by the plaintiff for personal injuries sustained by her while a passenger on defendant's train. The defendant plead a release of the cause of action. The plaintiff replied to so much of the answer as set up the release and alleged that the same was procured from her through the misrepresentation by her family physician, who was also acting as surgeon for the railroad company, to the effect that her injuries were trivial and that she would

be well in a few weeks, and by his insistence that she would not get any more in case of a suit against the railway company. It is alleged that her injuries were much more serious than had been represented by the physician and that such injuries were permanent, and the amount paid was inadequate, and that she had been overreached .by the railway company by its surgeon, who was acting in a dual capacity. It thus appears that in the *Lawton case* the allegations made by the pleadings were stronger in favor of the plaintiff than the allegations of the complaint in the instant case. In the *Lawton case,* the physician acted in a dual capacity and he advised the plaintiff that she could not recover any more by suing the railroad, and the defendant was charged with overreaching the plaintiff through this physician. A verdict was had by the plaintiff. The railroad company requested the Court to charge the jury "that in this case there can be no recovery unless the jury are satisfied by the preponderance of the testimony that the release in this case was procured by fraud or misrepresentation." This request was charged with the modification by adding the words "or mistake." This .Court, in commenting on this modification and reversing the judgment for the plaintiff, said :

"* * * We think this was erroneous on the part of the trial Judge. The mistake on account of which the plaintiff asked to be relieved from the contract is that she made it on the faith of the opinion and advice of Dr. Black, the physician selected by her, as to the extent of her injuries and the probability of her recovery against the defendant. In such settlements resting necessarily on opinion, both parties know that they are taking the risk of error and mistake, and a release in such case can only be set aside on the grounds of fraud or bad faith in the transaction, and not on the ground of mistake or error of judgment or misleading statements when honestly made in good faith. It was error on the part of his Honor to instruct the jury that the release could be set aside on the ground of mistake. If a mistake was innocently made, no fraud practiced, no false intentional misrep-

resentation made, no bad faith, no overreaching, a release cannot be set aside. Where a party makes a representation in good faith, honestly believing the facts as stated by him to be true with no intent to deceive, no intent to induce any one to act upon a false representation, but simply is mistaken in his opinion or his judgment is erroneous as to the result of injuries or the probability of recovering damages therefor; a party acting upon such opinion is not to be relieved upon the ground of mistake. Judge Gage, in his order refusing a new trial, says: 'I think it is fair to say the testimony does not convict Dr. Black of a fraudulent intent in what he did and said. The plaintiff's counsel so admitted to the jury.' Where there is no fraud, but a *bona fide* mistake is made in opinion, that is not sufficient to relieve on the ground of mistake. We think his Honor was in error in instructing the jury they could disregard the release, if plaintiff made a mistake as to her condition when she executed it."

It should be pointed out that the appellant, in his complaint, did not charge that the release was obtained by the respondents by fraud, deceit, misrepresentation, concealment or imposition in any form. The sole basis of the contention of the appellant that the release should be rescinded is that it was given under a mutual mistake of fact. Since we have found that there was only a unilateral mistake, we think the lower Court was correct in sustaining the demurrer to the complaint. It is well to observe that if a release could be set aside on a unilateral mistake, in the absence of fraud, deceit or misrepresentation, no one could ever make a settlement and take a release with the assurance that it would not be attacked and set aside on the statement of the person who executed it, that when he signed it he was mistaken as to the extent of his injury and damage as thereafter developed.

We conclude that there was no error in sustaining the demurrer and dismissing the action.

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.