MARY RICE vs. THE DWIGHT MANUFACTURING COMPANY.

It is no sufficient ground for refusing to instruct a jury, as to the legal effect of the facts which the evidence tends to prove, and for leaving such legal effect to the jury, as a question of fact, that the evidence is alleged to be so obscure, that it cannot be understood by common minds.

Where a misapprehension exists between the parties to a contract, with reference to its subject matter, as where one of them intends to sell a particular thing and the other intends to buy a different thing, or where the parties to a sale suppose the subject of it to be in existence, when, in fact, it has been destroyed, such misapprehension, if satisfactorily proved, will show that no contract has in fact been made. But the same consequence will not result from a misapprehension of one or both of the parties, with reference to the legal effect of the terms of their contract, unless it be altogether unintelligible.

A party, who enters into a contract in writing, without any fraud or imposition being practised upon him, is conclusively presumed to understand and assent to its terms and legal effect.

If A enter into the service of B upon an agreement to labor for him a year, and leave at the end of six months, A can maintain no action for the services so rendered; but if B then promise A to pay him for the six months' labor, upon the performance of any additional service, however slight, or the doing of some act by A, to his personal inconvenience, though of no value to B, and such service is rendered or act done, this will so far operate as a waiver of the original contract, that an action may be maintained by A for the six months' labor.

THIS action, which was tried before *Wells*, C. J., in the court of common pleas, was brought to recover compensation for the work and labor of the plaintiff, who proved that she was in the employment of the defendants about three weeks, and that her services, if paid for at the usual rate, would amount to $13·64.

The defence was, that the services of the plaintiff were rendered under an alleged special contract, by which she engaged to work for the defendants a year, and to give them four weeks' notice before leaving their employment; and that

she left without consent, or notice, or for any justifiable cause.

It was in evidence, on the part of the defendants, that certain papers called "regulation" papers were posted up by them in various parts of their mill, and that when a person was hired permanently, it was their practice to give her one of these regulation papers with her name on it, though not written thereon by herself. The following is a copy of the regulation paper : —

"Regulations to be observed by all persons employed by the Dwight Manufacturing Company.

"The overseers are to be punctual in their rooms at the starting of the mill, and not to be absent, unnecessarily, during working hours. They are to see that all those employed in their rooms are in their places in due season, and keep a correct account of their time and work. They may grant leave of absence to those employed under them when there are spare hands in the room to supply their places; otherwise they are not to grant leave of absence, except in cases of absolute necessity.

" All persons in the employ of the Dwight Manufacturing Co. are required to observe the regulations of the room in which they are employed; they are not to be absent from their work without consent, except in case of sickness, and then they are to send the overseer word of the cause of their absence.

" They are to board in one of the houses belonging to either of the companies, (except they obtain leave to the contrary,) and to conform to the regulations of the house in which they board.

"The company will not employ any who are intemperate or immoral in their habits, or who are habitually absent from public worship on the sabbath.

"All persons entering the employ of the company (unless by special agreement) are considered as engaged to work one year, if the company require their services so long.

" All persons intending to leave the employment of the company are to give four weeks' notice of their intention to their overseer; and their engagement with the company is not considered as fulfilled, unless they comply with this regulation.

"Payments will be made monthly, including board and wages, which will be made up to the last Saturday of every month, and paid in the course of the following month.

" Any one who shall take from the mills or yard any yarn, cloth or other article belonging to the company, will be considered guilty of stealing, and prosecuted accordingly.

" These regulations are considered part of the contract with all persons entering the employ of the Dwight Manufacturing Co. All persons who shall have complied with them, on leaving the employ of the company, shall be entitled to an honorable discharge.

" Children are not admitted to the mills; nor visitors, without permission from the counting room."

It was also in evidence, on the part of the defendants, that the plaintiff applied to their agent for employment, and agreed to work a few days on trial, and, if she liked, then to take a regulation paper and work a year according to the regulations ; that she worked accordingly a few days, expressed herself satisfied, and took a regulation paper from the clerk having charge of these papers, with her name upon it ; and that after working about twelve days, she gave notice that she should leave in four weeks, and, in a few days, did leave without license.

The regulation paper was read to the jury, and each party introduced evidence bearing upon the question, whether a special contract had been made and violated.

The defendants requested the judge to instruct the jury, "that if they believed that the plaintiff took a regulation paper, and promised to work a year, according to its provisions, then, as a matter of law, the plaintiff was bound by all the provisions of the regulations, according to their legal import, to be settled by the court, and was bound by that contract to continue at work for the term of one year, and that four weeks' notice must be given before leaving the employ of the defendants, and she would be thus bound unless she was excused on the ground of weakness of intellect, imposition, or artifice, although the jury were not satisfied that she understood that she had made such a contract or had read or understood the contents of the paper." The judge refused so to instruct the jury.

The plaintiff objected, that the stipulations of the regulations were not binding upon her, among other reasons, because the regulations were imperfect, void for uncertainty, and not valid for want of mutuality.

The judge instructed the jury, " that as the regulation paper was not signed by the defendants; nor delivered by her, as a contract, to the defendants, she was not, by the acceptance of the paper and promise, as before stated, necessarily bound by its provisions, according to their legal interpretation, as a contract ; that the fact, that she took the paper

under the circumstances stated, was strong evidence, tending to prove that she regarded it as a contract binding upon her, and that she had read and understood its contents, but it was only evidence of the fact; that as the regulations professed to make but a part of the contract, and the evidence of the rest of the contract must be sought from other sources, and as these regulations contained various stipulations, which could not enter into the contract of the plaintiff and defendants, and it was claimed that they were so obscure that they could not be understood by common minds, it was not a question of law to the court, as to the legal construction to be given to the several stipulations contained in the regulation paper; but the whole evidence presented a question of fact for the jury to decide, which question was, whether a contract had been made, and, if made, whether it had been broken by the plaintiff."

The judge further instructed the jury, "that to constitute a binding contract, there must be an express or implied agreement, in relation to every thing which is essential to a valid contract, and that if any thing essential to a contract is omitted in the stipulations of the parties, the agreement has no legal validity as a contract. Another thing necessary to a valid contract between parties, was the agreement of the minds of both parties, in relation to all the essential terms of the contract. If two persons should each suppose, that they had made a contract with the other, and it should afterwards be discovered that there was a mutual misunderstanding as to any of the essential terms of the agreement, such misunderstanding would prevent the contract from being binding, and the jury, when determining the question, whether there was any misunderstanding of the parties in the present instance, might take into account the alleged obscurity of the regulation paper."

In conclusion, the jury were instructed, "that it was incumbent on the defendants, in order to maintain their defence, to satisfy the jury, that there was an agreement between the parties, embracing all the particulars essential to a valid

contract, and understood alike by both, in all its essential particulars."

The defendants contended, that if the plaintiff left without giving four weeks' notice, they might prove the loss sustained by such leaving in mitigation of damages; but the judge ruled, "that this evidence was inadmissible, inasmuch as if the plaintiff left without giving such notice, (if she had agreed to give it,) she would thereby forfeit her entire claim for compensation." When this decision was made, the attention of the court had not been called to the case of *Hunt* v. *The Otis Company*, 4 Met. 464, and after that case was read, neither party asked the court to change the ruling, or to suffer evidence on this point to be introduced.

The plaintiff contended, that if she made a contract for a year, the year was not to commence until after the time of trial had expired, and that she was, at all events, entitled to recover for work done during that prior period. The judge left it to the jury, as a question of fact, to be determined from all the evidence in the case, when, by the understanding of the parties, the year was to commence, if a contract for a year was proved.

The defendants contended, that this was a question of law to be decided by the court. But the judge ruled otherwise.

The plaintiff contended, that if she had violated her contract, so as to warrant the defendants in alleging that she would forfeit her wages; yet they had, for a sufficient consideration, agreed to waive the forfeiture. She introduced evidence tending to prove, that some time after she left, and had been refused her wages, an agent of the defendants, duly authorized, though he was not their general agent, sent word to the plaintiff, that if she would come to him, and talk over the matter, and not be impudent, he would pay her for the work she had done, and that she did go and did comply with all the requirements proposed to her.

The judge left it to the jury to decide, upon the evidence, whether the agent was authorized to make the offer, and whether it was made to and accepted by the plaintiff; and

instructed them that if the plaintiff had satisfied them upon all these points, that such authorized offer and compliance would amount to a waiver by the defendants of the claim for forfeiture of wages.

The defendants contended, that the question of authority was a question of law, to be decided by the court; but the judge left it to the jury, as a question of fact, under instructions, which were not objected to.

The jury rendered a verdict for the plaintiff for $13·64 with interest ; and the defendants filed exceptions.

*J. Wells*, for the defendants.

*W. G. Bates*, for the plaintiff.

FORBES, J. The court are of opinion that, in this case, several of the exceptions were well taken.

1. It appears that certain regulations adopted by the defendants, together with parol evidence, were relied on, by them, to prove a special contract. The judge was requested to instruct the jury as to the law applicable to the facts, which the evidence tended to prove. This he declined to do, on the ground, that as the evidence, upon which the defendants relied, consisted in part of the regulations, and in part of evidence which was derived from other sources, and as the evidence offered, or some part of it, was alleged to be so obscure that it could not be understood by common minds, therefore it did not present a question of law for the court, but a question of fact for the jury. This, we think, was erroneous. It was, no doubt, the province of the jury to decide all questions of fact; but it was the duty of the court to instruct the jury, hypothetically, that if a particular fact or combination of facts was proved, certain legal consequences would follow. If any part of the evidence was wholly unintelligible, no injury could arise, provided the jury were properly instructed as to the burden of proof. As we understand these exceptions, the judge, notwithstanding he was requested to instruct the jury as to the law by which the case ought to be governed, declined to do it, and submitted to the jury a question of law as well as matters of fact.

2. It appears to us that the jury might have been misled by the remarks of the judge in relation to misapprehensions between contracting parties. There may be cases where a misapprehension, satisfactorily proved, might show that no contract had been made ; as, for instance, where the subject matter of the contract had been mistaken. If, in a negotiation for the sale of property, it should appear that the seller had reference to one article and the buyer to another, or if the parties supposed the property to be in existence, when in fact it had been destroyed, no contract would grow out of the negotiation. But misapprehensions of another kind would not be followed by the same consequences. When a contract is reduced to writing, it may, and probably does, sometimes happen, that one or both of the contracting parties misapprehend the legal effect of the writing. Yet, if it be not altogether unintelligible, the court will read the contract for the parties, and they will be bound by its legal effect. The obscurity of such a writing, or the difficulty of putting a satisfactory construction upon it, is no reason for setting it aside, or for leaving both the fact of its execution and its legal construction to the jury. The same doctrine is applicable when the contract is made by parol. The language used by the parties while contracting may be proved, and, when proved, it is to be taken in its usual and ordinary acceptation ; and however difficult it may be, and frequently is, to put a just construction upon it, still that duty devolves upon the court. The jury are to find whether or not the language was used; the court are to instruct the jury as to its legal effect, if used. This is the general rule. Exceptions may be found in those cases where the words employed have a local meaning, different from their common use, or where their meaning is modified and peculiar, when used in reference to a particular business, art, or trade. In these instances, the signification of words may be a fact to be proved, and, like a translation from a foreign language, may involve a question for the jury. It appears to us, that if the views of the court below were not erroneous, they, at least, were not

stated with sufficient precision, and that the jury might have been misled by them.

3. When a party enters into a written contract, in the absence of fraud or imposition, he is conclusively presumed to understand the terms and legal effect of it, and to assent to them. In the present case, it was not, perhaps, necessary for the judge to state, as a naked proposition, that a party, who promises to perform the stipulations of an instrument, of the contents of which he is absolutely ignorant, would be conclusively bound, because the evidence, apparently, did not call for such instructions, and a judge is not bound to give instructions upon abstract propositions wholly unsupported by the evidence.

If the plaintiff had read the regulations, or if she had received from the operatives in the mill, or from other sources, general information as to their contents, and was content to waive further inquiry, and, with the imperfect information which she possessed, entered into the contract, it appears to us that she would have been bound, and that the jury should have been so instructed. And, further, if, from the state of the evidence, it became necessary to give the instructions asked for, we think they ought to have been given.

It is difficult to believe, that any person of sound mind, without circumvention, would enter into an agreement in the manner supposed ; but if the fact were clearly proved, it would be dangerous to permit the contract to be avoided on the ground of ignorance.

4. The instructions of the court as to what is called "a waiver by the defendants of the claim for forfeiture of wages," appears to have been correct in substance, although the language in which they were conveyed may not have been strictly appropriate. If the plaintiff agreed to labor for the defendants for one year, for instance, and left their service at the expiration of six months, without cause, she could not maintain an action for the services actually rendered, not exactly on the ground of a forfeiture, but in consequence of the non-performance, on her part, of the special contract.

There is no form in which she could present her case truly to the court, in which she would not fail for want of proof. Still the services might have been, to some extent, meritorious and valuable to the defendants, and it might be equitable that a reasonable compensation should be made for them. Thus circumstanced, if the defendants promised to pay the plaintiff for the six months' labor, upon the performance of any additional service, however slight, or upon the doing of any act which would put the plaintiff to personal inconvenience, though of no value to the defendants, and the service was rendered or the act done by the plaintiff, it would so far operate as a rescission or waiver of the original contract, that an action might be sustained.

The exceptions are sustained, and a new trial is to be had in the court of common pleas.