# CHARLESTON.

## SILLIMAN *v.* GILLESPIE *et al.*

### Decided December 1, 1900.

1. SALE OF LAND—*Mutual Mistake—Rescission.*
   Because of mutual mistake or misunderstanding as to the boundaries and location of a tract of land included in a sale, the vendee may have the sale rescinded, but cannot compel a reduction of the purchase money; for the vendor is entitled to have the land back, or have the purchase money paid in full. (p. 376).

2. VENDOR—*Rescinding Sale—Consideration.*
   If the vendor does not want the sale rescinded, he may elect to receive a reduced consideration, but he cannot be compelled to do so.   (p. 376).

3. VENDOR'S MISREPRESENTATION—*Abatement—Extent of.*
   Where the vendor has been guilty of fraud or misrepresentation, he may be compelled to abate the consideration, to the extent of such fraud or misrepresentation.   (p. 377).

Appeal from Circuit Court, Tucker County.

Bill of Edward S. Silliman against Charles D. Gillespie and others.  Judgment for plaintiff.  Defendants appeal.

*Affirmed.*

E. D. TALBOTT and GEO. P. SHIRLEY, for appellants.

SAM. V. WOODS, for appellee.

Dent, Judge:

Charles D. Gillespie and M. W. Gillespie appeal from a decree of the circuit court of Tucker County enforcing a vendor's lien against them in favor of Edward S. Silliman. Their claim of defense is that the plaintiff conveyed them six acres of valueless land that they did not purchase instead of four acres of valuable land they did purchase, the difference between the two being about one thousand dollars, and they claim the abatement of the purchase money to this extent. The contract shows that defendants purchased from plaintiffs a tract of twenty and fifteen-sixteenths acres, including saw mill race and other buildings and appurtenances at the price of seven thousand five hundred dollars. Defendants allege in their answer "that when they went upon said land to examine it previous to making the purchase, they were shown said lands by the said Bowman, agent for plaintiff, who showed them and represented to them that plaintiff owned certain lands running to said ninth corner of the L. E. and P. B. Goff three hundred and twenty-five acre tract, and pointed out to them lands within plaintiffs' boundary that are not by said deed (plaintiffs' deed to defendants) contained therein, by which respondents will lose from three to four acres of, the most valuable part of said survey, which respondents believed was then the land of plaintiff and is still owned by him, and the scheme to shove respondents across Big Black Fork on the south side thereof and compel them to take from three to four acres of worthless land instead of valuable land within said town, was fraudulent and known to be fraudulent by plaintiff and his agent Bowman at the time the deed was written." This allegation is controverted by general replication. The relief asked by the defendants is not affirmative, but negative. The proof utterly fails to sustain this allegation. C. D. Gillespie testifies that Bowman showed him from his house to the upper end of the neck and said the land "laid down in the bottom by an old fence that run down through where the lumber yard is now. At the chestnut now down."

"He never told me about any land laying on the south side of Big Black Fork." This conversation was about a month before the purchase. Bowman testifies: "I described the land to him without going on the land from my office door, and pointed to the foot hill on the south side of the river, and told him as near

as I could, having surveyed the land before Gillespie purchased the land, how the line run on the south side of the river, and I described the boundary as well as I could to him without going around with him." "I had not one cent of interest in the sale of this land, * * * * and the information that I gave him was given to him merely as a friendly act upon my part because he asked me." He further testified that the land the defendants were contending for at that time belonged to the "West Virginia Railroad Company, J. E. Poling and the Goff brothers." This was all the evidence relating to the above quoted allegation from defendants' answer, which leaves it unsustained by proof. The most that can be said in favor of the defense in this case is that the defendants who could have done so failed to inform themselves as to the true location of the whole tract before they purchased it, and that there was no fraudulent representation or inducement held out to them by the plaintiff or his agent to draw them into the purchase. They bought a pig in a poke, and did not examine it to see whether it was a Virginia razor back or a West Virginia racer. They were probably mistaken as to the true boundaries of the land, and the plaintiff was likewise when he sold and conveyed land lapping on Pennington which, however, they made good by purchase from the owner. Plaintiff lived in Philadelphia where the purchase was made by the defendants. He was not on the land, and there is nothing to show he knew its location. Defendants did and could know all about it, for they were at it and on it. So far as the pleadings and evidence disclose, if there is anything wrong between them it arises from a mutual mistake as to the location of the land. In such a case all a court of equity can do at the instance of the vendee is to rescind the sale in toto, restore the property to the vendor and the purchase money to the vendee, and place the parties in *statu quo*. It cannot permit the vendee to retain the property and have a reduction of his purchase money, when the vendor has not been guilty of fraud, but enters into the contract in good faith, and sells his property for a fixed sum. The court cannot make a contract between the parties, but it may rescind on the ground of mutual mistake, for the reason that the minds of the parties never met, and a valid contract does not exist. It could put the vendor to the election of having his sale rescinded or allowing a reduction of the pur-

chase ·money, but unless the vendee asks the rescission of the contract, the vendor cannot be put to such election, for he is entitled to have his property back or his purchase money in full. If the vendor does not want the sale rescinded, he can agree to take a less purchase price and thus make a binding contract, but the court cannot compel him to do so. *Pratt* v. *Bowman,* 37 W. Va. 715, 723. The defendants do not ask for a rescission of the sale in this case, but they want to hold on to the property and have a reduction of the purchase money. The plaintiff not having been shown to have been guilty of any fraud or concealment the Court cannot thus reform his contract and make a new one for him, and the defendants electing to keep the property must pay the price agreed by them. There is' nothing in the record to show that Griscom at the time of the suit had any interest in this matter or was a necessary party thereto. The mere fact that he joined in he title bond does not establish a present interest in him. Nor does the record show the plaintiff to be a married man.

The decree is affirmed.

*Affirmed.*