BARBER-PASCHAL LUMBER COMPANY v. J. D. BOUSHALL.

(Filed 31 March, 1915.)

1. **Contracts, Written—Ambiguity—Misapprehension of Parties.**
   While ordinarily a written contract clearly expressing an agreement made between the parties will not be set aside, in the absence of fraud, for a mistaken impression of its terms resting solely in the mind of one of the parties, this rule of construction has no application where the essential terms of the agreement are ambiguously expressed, reasonably susceptible of different interpretations, and it is clearly made to appear that these terms have been used and intended by one of the parties in one sense and by the other in a different sense; for therein the minds of the parties not coming to an agreement, there can have been no contract made.

LUMBER CO. *v.* BOUSHALL.

**2. Same—Equity—In Statu Quo.**

Where, in permissible instances, it is shown that the parties to an alleged contract had supposed they had agreed upon its terms, when in point of fact they had not done so with reference to its material parts, the law will place them *in statu quo.*

**3. Contracts to Convey — Ambiguity — Mistake—Deeds and Conveyances— Timber—Damages.**

Where it appears that the parties to a contract to convey a certain tract of land, known and designated as the M. tract, each in good faith, thought a large body of timber was situated thereon, when it was upon an adjoining tract, and the vendor stated to the vendee at the time that he was unfamiliar with the land; and it appears that he contracted to sell only the M. tract and the title he had thereto or was authorized by other owners thereof to convey: it is *Held,* that the minds of the parties had not come together into a valid or enforcible contract for the sale of the land whereon the timber was situate, and the transaction afforded no right of action for the purchaser to recover any damages he may have received by reason of the inability of the vendor to convey it.

**4. Same—Negligence.**

Where both parties to a contract to convey lands honestly supposed that a large body of timber was growing thereon, when in fact it was on an adjoining tract of land, and the supposed purchaser brings his action to recover the damages he has sustained for the inability of the vendor to make the deed contemplated by the contract, and it appears that the vendor had informed the purchaser, at the time, that he was personally unacquainted with the boundaries, and that his title had come to him by devise or descent, and the title deeds were in the possession of others: it is *Held,* that, under the facts stated, the principle of culpable negligence will not apply to the vendor so as to deny him the defense that no agreement had been made, and to avoid the payment of the damages sought in the action.

**5. Contracts—Mistake—Trials—Wrong Theory—Appeal and Error.**

In this action to recover damages for the breach of a contract to convey certain lands, known as the M. tract, the plaintiff asserted that the contract was one way, and the defendant another way, and prayed for specific performance; and the allegations and evidence being sufficiently broad for the Supreme Court on appeal to determine the matter upon the correct ground that no contract had in fact been made, the respective prayers for relief are not of the substance, and the decision is put upon the correct view of the case.

**6. Contracts to Convey—"Bond for Title"—Penalty—Liquidated Damages— Election—Measure of Damages.**

Where in a contract to convey lands, written in the ordinary form, it appears that a certain sum is fixed upon as a penalty for the failure of the vendor to convey a perfect title in accordance with its terms, and that the sum so fixed is in disproportion to the magnitude of the transaction, the complaining party is not confined to a recovery of the stated sum as a stipulation fixing the extent of liquidated damages, but at his election may sue for the damages he has actually sustained.

·7. Contracts — Failure to Agree — Deeds and Conveyances—Timber—Part Payment—Damages—Offsets—Pleadings—Appeal and Error—Costs.

Where it appears that the parties to the action have mistakenly supposed that they had entered into a valid contract to convey lands, the plaintiff claiming damages for the inability of the defendant to convey the title he was supposed to have contracted to convey and the defendant demanding specific performance; that the plaintiffs have paid a certain sum of money and had cut timber upon the lands: *Held*, the plaintiff is entitled to recover the sum he has paid, with interest, and on repleader by defendant the latter is entitled, as an offset, to the value of the timber cut as it stood on the ground; and in this case cost is taxed against defendant in the lower court, and cost on appeal is divided.

APPEAL by defendant from *Connor, J.,* at October Term, 1914, of LEE.

Civil action to recover damages for breach of a written contract to convey land.

The contract, dated 10 October, 1913, was in the form of a bond for $500, to be void on condition that defendant conveyed to plaintiff by good and sufficient deed a tract of land in Chatham County, N. C., described as follows: "A certain parcel of real estate situated in Chatham County, State of North Carolina, and bounded by the Foushee lands and Deep River, and commonly known as the McIntosh tract, containing 371 acres, more or less, belonging to American Iron and Steel Company, the estate of J. M. Heck, deceased, Lobdell Car Wheel Company, and J. D. Boushall, trustee; the same to be conveyed by a good and sufficient ·warranty deed, conveying a good clear title to the same, free from all encumbrances," at the contract price of $5,565, $565 being paid down and the remainder evidenced by the promissory notes of plaintiff, in different amounts and payable at specified dates to 1 ·November, 1914.

Plaintiff contended and offered evidence tending to show that the tract of land, as sold and described in the written instrument and known as the McIntosh tract, contained from 2½ to 3 million feet of merchantable lumber, which was the main inducement to the purchase; that, acting under the terms of the contract and on representations of defendant, plaintiff moved its mill on the tract and commenced cutting the timber, when he was stopped by the agent of the American Iron and Steel Company, who claimed that the timber belonged to that company and was not included in plaintiff's contract of purchase; that defendant had failed and refused to comply with his written contract or to make a deed conveying the land described therein and the deed tendered by defendant was not in accord with the written agreement and contained but a small portion of the timber referred to, about 97,000 feet, and defendant had no title to that portion of the land on which the remainder of the timber was situated, and plaintiff was thereby greatly damaged.

Defendant contended that he sold and intended to convey only that portion of the McIntosh land which was owned by the three parties mentioned, to wit, The Steel Company, The Lobdell Company, and the Heck estate, this being all that defendant owned; that the contract, in terms, so specified and that the deed tendered by him, although it included no reference to the McIntosh place in its description, contained all the McIntosh place owned by the three parties specified, described by metes and bounds, and was in all respects a compliance with his written contract, and demanded judgment for specific performance of the contract as written or damages for breach, etc.

It was admitted that the $565 had been paid defendant on the contract price; that plaintiff company, before being stopped, had cut the timber situate on the land contained in the deed which defendant tendered, amounting to about 95,000 to 100,000 feet; that defendant Boushall had acted in good faith, and no fraud was intended or practiced by him in the transaction.

There was verdict for plaintiff, assessing plaintiff's damages at $2,290, and judgment having been entered for this sum, and also the $565 paid by plaintiff on the contract, defendant excepted and appealed.

*A. A. F. Seawell and Siler & Millikin for plaintiff.*
*Pace & Boushall and Williams & Williams for defendant.*

HOKE, J. The facts in evidence tended to show that The American Iron and Steel Company owned two adjoining tracts of land in the county of Chatham, known as the Foushee tract and the McIntosh tract, the divisional line between them originally running from Deep River north to a pond on the public road and, for a part of the distance, along an "old hedge-row," and that on the McIntosh place, near this line, was a large body of timber, 2½ or 3 million feet; that some time after acquiring the land, the precise date not given, the company ran a new line dividing the property and by which the timber was thrown on the Foushee tract, and thereafter the timber and the portion of land on which it was situated was treated as part of the Foushee tract, and so termed on the company's books. Thereafter, The American Iron and Steel Company mortgaged the land, known as the Foushee land as now termed by them, to the Lobdell Car Company, a corporation of the State of Delaware and having its principal place of business in said State, and the remainder of the property, towit, the McIntosh place, as constituted under the new division, was mortgaged by the Iron and Steel Company to the Lobdell Car Company and J. M. Heck, now deceased, of the city of Raleigh; that plaintiff, desiring to purchase the body of timber heretofore mentioned, and having learned that same was owned by defendant J. D. Boushall, in 1913 ap-

proached said Boushall for the purpose of acquiring the timber and purchasing the land on which the same was situate, and said Boushall, having come into possession and control of the Heck interest, and having assurance that, as to the part of the land mortgaged to Mr. Heck, now deceased, his negotiations would be approved by the iron and steel and the car companies, contracted to convey the McIntosh place to plaintiff company under the terms and provisions of the written contract above set forth. It further appeared that during the negotiations defendant, acting honestly in such belief, represented that the timber in question was on the property owned by him, and that his agent, a man living out there, pointed out the "old hedge-row" as the dividing line; that plaintiff contracted for the timber under the impression that defendant owned it, and that procuring the timber was a principal inducement to the deal, and the value thereof called for the larger portion of the purchase price agreed upon, and that the descriptive terms used in the bond, as understood by plaintiff, covered and was intended to cover the land on which the same was situated. On the other hand, it was admitted that defendant was guilty of no fraud in the transaction, and it also appeared that he acted throughout in the honest belief that his boundaries covered the timber; that he told plaintiff's representatives in the trade that he had no personal knowledge of the lines or boundaries; that the title deeds were in possession and control of the car company, in the State of Delaware, and that, while plaintiff was under the impression that his boundaries covered the timber and made the trade in reference to that, he only intended to sell the land that was mortgaged to him, and, in using the descriptive terms of the contract, he understood and intended that they only referred to such land.

Upon these the facts chiefly relevant, and about which there is no substantial conflict in the testimony, we are of opinion that there has been no valid contract between these parties, and that the verdict establishing a breach and assessing damages on that theory must be set aside.

It is recognized as a fundamental principle in the law of contract that there must be a meeting of the minds of the parties on the same thing at one and the same time. It is true that when the parties have expressed their agreement, either oral or written, in terms that are explicit and plain of meaning—that is, when their minds have met on the terms of the contract—it may not be revoked or altered by reason of the mistake of "one of the parties alone, resting wholly in his own mind," there being no fraud or misrepresentation by the other; but where essential terms of an agreement are ambiguous, so much so as to be fairly and reasonably susceptible of different interpretations, and it is clearly made to appear that these terms have been used and intended by one of the parties in one sense and by the other in a different sense, in such case

there has been no meeting of the minds on the terms of the contract, and unless some facts have arisen creating an estoppel or rendering such course altogether inequitable, the agreement or attempted agreement should be set aside and the parties placed *in statu quo.* This was held in substantially these terms in *Strong v. Lane,* 66 Minn., 94, a case not unlike the one before us, and the principle will be found very generally approved in the decided cases and text-books of approved excellence. *Machine Co. v. Chalkley,* 143 N. C., 181; *Lumber Co. v. Wilson,* 51 W. Va., 30; *Silliman v. Gillespie,* 48 W. Va., 374; *Contan v. Sullivan,* 110 Cal., 624; *Chamberlain v. Martin,* 20 Va., 283; *Werner v. Rawson,* 89 Ga., 619; *Kyle v. Kavenagh,* 103 Mass., 356; *Rice v. Dwight Mfg. Co.,* 56 Mass., 80; *Fink v. Smith,* 170 Pa. St., 124; *Bingham v. Bingham,* 27 Eng. Rep. Repr. Chan. 7, 934; *Cooper v. Phipps,* 29 L. R. Eng. and Ir. App. Cases, 49; Pomeroy Eq. Jurisprudence, sec. 856; Pomeroy on Contracts, secs. 250-251; 29 A. and E. (2 Ed.), pp. 664-665; 9 Cyc., 398.

This being the established position, the case before us, as heretofore stated, is one which, in our opinion, clearly calls for its application, the facts showing that the description in the contract is ambiguous and that both parties designing, the one to sell and the other to buy the timber, and honestly believing that the defendant owned it, entered into a contract for the land on which it was supposed to be situate, and, in the written instrument, the plaintiff used and intended to use the descriptive terms as covering the McIntosh place as it formerly was, "the land commonly known as the McIntosh tract," and the defendant intended to confine the contract to that part of the McIntosh place which he controlled and which was then owned by the three parties mentioned, the Iron and Steel Company, The Lobdell Car Company, and the Heck estate.

It has been said that culpable negligence of the complaining party will sometimes prevent the operation of the principle, but, as stated in one of these citations, Pomeroy Eq. Jur., sec. 856: "It is not every negligence that will stay the hand of the court, but the best authorities are to the effect that the neglect must amount to the violation of a positive legal duty," and the qualification, if it applies at all to the case presented, should not prevail in this instance, the evidence showing further that defendant informed plaintiff that he was personally unacquainted with the boundaries, and also that the interest had come to him by devise or descent and the title deeds were in the keeping of others.

It is true that neither party is asking relief on any such ground, but plaintiff, in his pleadings, asserting the contract to be one way and demanding damages for its breach, and the defendant asserting that it is another way and praying for specific performance, the allegations are sufficiently broad to present the question, and the evidence clearly showing the mistake, the respective prayers for relief are not of the sub-

stance, and the decree must be entered that the contract be set aside, or rather that there has never been a contract between them. *Alston v. Connell,* 140 N. C., pp. 485-494.

It is insisted for defendant that plaintiff is restricted in the bond to the sum of $500; that this should be regarded as an agreement for liquidated damages, and that no recovery by plaintiff can exceed this amount, and no greater sum can be considered as a basis for adjustment; but, on the facts presented, the authorities are against this position. The bond is in the old form in which the sum of $500 is evidently stated as a penalty, and was never intended, in a contract of this character and value, to restrict the plaintiff's recovery, in case of breach, to such an amount. The decisions are that where a contract of this kind is established the plaintiff, at his election, may sue for the damages actually sustained. *Rhyne v. Rhyne,* 160 N. C., 559; *Noyes v. Phillips,* 60 N. Y., 408; *Lowe v. Peers,* 4 Burr, 2228; 11 Cyc., p. 1026.

On the record, it must be adjudged that there has been no contract between the parties; that the verdict, establishing a breach of same and assessing damages for such breach, be set aside; and it appearing from the pleadings that the plaintiff has paid on the contract the sum of $565, he is entitled to recover this sum and interest thereon from time of payment, and, on repleader by defendant, he is entitled, as an offset to this sum, to the value of the timber as it stood on the ground and which was cut by plaintiff from the part of the McIntosh place owned by the defendant while he was acting under the agreement as he understood it to be.

The plaintiff is entitled to costs in the lower court, thus far accrued, and the costs of appeal will be divided.

Error.