The plaintiff is engaged in the brokerage business for the sale of yarns and maintains his office in Burlington. The defendant is engaged in the manufacture and sale of fine combed yarns, with its principal office at Belmont, North Carolina. On 12 September, 1928, the plaintiff and the defendant entered into a brokerage contract in writing which provided that the plaintiff was to sell yarns for the defendant "at a commission of two per cent of the amount of invoices and goods sold by E. W. Sweet Yarn Company, and two per cent commission on all goods shipped by repeat orders or orders from original orders." . . . Said written agreement further provided: "It is hereby mutually agreed that this agreement is for an unlimited time and may be terminated or canceled by either party . . . upon written notice of sixty days to the other party."
In 1931 the plaintiff instituted this action against the defendant in the General County Court of Alamance County. The complaint, after referring to the brokerage contract heretofore mentioned, alleged "that during the existence and continuance of the aforesaid contract and agreement the defendant, Acme Spinning Company, through its representatives, approached the plaintiff with a view to securing larger sales within the territory allotted to the plaintiff. That the defendant was very anxious to increase its sales in said territory and after considerable discussion with the plaintiff it was agreed that it would be necessary for some arrangement to be made whereby the product of the defendant *Page 136 
company should be mercerized. That the plaintiff thereupon agreed to find a concern that should mercerize the product of the defendant and thus permit it to increase its sales within said territory. That pursuant to this agreement the plaintiff approached the Ideal Mercerizing Company, a corporation engaged in the mercerizing business in the city of Burlington and proposed to it that it purchase from the Acme Spinning Company certain quantities of yarn which were to be mercerized and then sold by the plaintiff. That this proposition appealed to the Ideal Mercerizing Company and to the Acme Spinning Company, and each of said companies thereupon entered into a contract and agreement whereby the Ideal Mercerizing Company should purchase and the Acme Spinning Company should sell a certain amount of yarns upon which this plaintiff was to receive a commission of two per cent. . . . That it was agreed between the Ideal Mercerizing Company and the Acme Spinning Company and this plaintiff that the agreement aforesaid should continue for a period of two years and that the Acme Spinning Company should sell and the Ideal Mercerizing Company should purchase at least 20,000 pounds of yarn per week. It was further understood and agreed that the commissions on the annual sales thereby secured should amount to the sum of at least $10,000 per year. . . . That pursuant to said agreement the Ideal Mercerizing Company immediately placed with the Acme Spinning Company an order for one hundred thousand pounds of yarn as an initial order," etc. The plaintiff further alleged that the defendant failed to fill said order or to sell any yarn to the Ideal Mercerizing Company and thereby breached the contract, thus preventing the plaintiff from securing his two per cent commission on all sales.
The defendant answered, setting up the brokerage contract of September, 1928, and alleging that on 4 March, 1930, in accordance with the terms of said contract the defendant had terminated said agreement and paid the plaintiff all commissions due him upon all sales which he had made during the existence of the agreement. The defendant further alleged "that in February, 1930, the plaintiff had approached it with a proposition whereby this defendant and Ideal Mercerizing Company should enter a contract whereby Ideal Mercerizing Company should mercerize and finish large quantities of defendant's yarn from time to time. Plaintiff drew up and forwarded defendant a contract for its signature, but the terms of this contract were unsatisfactory to defendant, and both the plaintiff and Ideal Mercerizing Company were promptly notified that the defendant could not enter into or agree to the terms and conditions of the offer for the reason that the terms and methods of financing the proposition were entirely unsatisfactory." *Page 137 
The plaintiff testified that there was a written contract between the defendant and himself, made in 1928, whereby he was to receive a commission of two per cent on yarns sold for the defendant, and that he approached the president of the Ideal Mercerizing Company of Burlington with reference to mercerizing yarns manufactured by the defendant, and that Suggs, secretary and treasurer of the defendant, and Phillips, president and treasurer of the Ideal Mercerizing Company, entered into negotiations for the purpose of arriving at a satisfactory agreement whereby the Mercerizing Company should mercerize yarns manufactured by the Spinning Company, and such yarns to be sold by the plaintiff. The proposition contemplated that the defendant, Spinning Company, should sell and deliver to the Mercerizing Company approximately 20,000 pounds of yarn per week for a period of two years. At that time the average price on yarn was about fifty cents a pound. The terms were three per cent — 30 days — on each 100,000 pounds order. Plaintiff said: "The line of credit that the Ideal Mercerizing Company wanted under my proposed arrangement was approximately $90,000 or $100,000. In order to secure such line of credit it was proposed that the Ideal Mercerizing Company should give a mortgage on its plant for $25,000." The plaintiff prepared a contract and deed of trust embodying the proposition in detail, and the contract was duly signed by the Ideal Mercerizing Company and forwarded to the defendant for signature. The defendant refused to sign the contract or to accept the deed of trust, contending that the proposed agreement was not satisfactory for that: (1) The amount of credit to be extended by the defendant to the Mercerizing Company was enormous, amounting to $40,000 or $50,000 a month, and further that the Mercerizing Company was a new concern listing real and personal property for taxes in the year 1930 in the sum of $31,867, and consequently its financial position did not justify such a large line of credit as the proposed agreement contemplated. The proposed agreement was to be submitted subject to the approval of the board of directors of the defendant.
The plaintiff testified: "Nothing was said to me by Mr. Suggs in reference to the approval of his board of directors to the contract or deed of trust. The problem of the directors was brought up when I first talked the situation over with Mr. Suggs in Belmont." However, the proposed contract in paragraph 9 thereof stipulated: "This contract shall become in force from the day of its signing," etc. All the evidence shows that it was never signed by the defendant. With reference to the right of the defendant to pass upon credit risks, plaintiff said: "As a matter of sales of this kind and on brokerage the selling company reserves the right always to determine the desirability of the purchaser as to a credit risk on its rating and ability to pay, the terms of the contract *Page 138 
and all of those particulars. That was true with my relation with the Acme Spinning Company. . . . At the time I called Mr. Suggs over the telephone about this matter to which I have referred or at one of the times he stated to me that any proposition that was made by the Ideal Mercerizing Company, looking to such arrangements as was being proposed, would have to be submitted to and approved by his board of directors." The uncontradicted evidence is that the board of directors of the defendant refused to approve the proposed agreement and so notified the Mercerizing Company. Plaintiff further said: "I was to receive two per cent commissions on the sales of such yarns of the Acme Spinning Company as I sold when sales were ratified by it, and I have received two per cent commissions on all orders that were sold and ratified except the contract in question. I have already admitted that I have never received any acceptance by way of accepted copy of this order or invoice, or otherwise from the Acme Spinning Company on this billing which I rendered them."
The following issues were submitted to the jury in the county court:
1. "Did the plaintiff and defendant enter into an agreement or contract as alleged in the complaint?"
2. "Did the plaintiff bring about and procure a contract or agreement between the defendant, Acme Spinning Company and Ideal Mercerizing Company for the sale of approximately 20,000 pounds of yarns per week by Acme Spinning Company to Ideal Mercerizing Company, such account to be secured to the extent of $25,000 by deed of trust on the properties of Ideal Mercerizing Company over a period of two years, as alleged in the complaint?"
3. "Did the defendant breach its said contract with the plaintiff, as alleged in the complaint?"
4. "What damage, if any, is the plaintiff entitled to recover of the defendant, Acme Spinning Company?"
The jury answered the first issue "Yes," the second issue "Yes," the third issue "Yes," and the fourth issue "$3,000."
Judgment was entered upon the verdict. The defendant made a motion to set aside the verdict and the judge of the county court made the following entry: "The defendant, in apt time, made its motion to set aside the verdict in this cause, for errors committed and assigned and to be assigned, and among other errors assigned and argued before the court, was the alleged error that the complaint of plaintiff did not allege a new, special and independent contract between the plaintiff and defendant for the particular sale of the products of the defendant to the Ideal Mercerizing Company, with authority to conclude such sale, but that the allegations of said complaint alleged the original contract of brokerage entered into between plaintiff and defendant on or about 12 *Page 139 
September, 1928, and that all allegations of said complaint with reference to the contract between the plaintiff and defendant were consistent with and referred to said contract, and that the defendant had based its entire defense upon the said contract of brokerage, and the failure of the plaintiff to secure an order or orders supported by a special contract securing such orders from Ideal Mercerizing Company, that the defendant could accept. The facts set forth in the foregoing affidavit were presented to and argued to the court, and the court directed that the defendant be allowed to file this affidavit in support of its motion to set aside the verdict, and for a new trial. The court itself did not understand that the plaintiff was alleging a new or special contract with reference to said transactions, until he understood counsel of plaintiff to state in the process of the trial that he was not relying upon the original contract, but upon the new contract. The defendant is permitted to file this affidavit in this cause."
Upon the hearing in Superior Court upon exceptions filed, the trial judge signed a judgment containing the following: "The plaintiff contends in this case that he has alleged a special contract independent of and not connected with the brokerage contract alleged. The defendant, on the other hand, contends that the only contract alleged in the complaint is the brokerage contract. Keeping in mind that the purpose of every complaint is to inform the defendant clearly of the grounds upon which it is being sued, . . . it will be noticed in paragraph 3 of the complaint it is alleged that the plaintiff was under a brokerage contract with the defendant, and was to receive two per cent brokerage on sales thereunder. Plaintiff alleged `during the existence and continuance of the aforesaid contract' certain transactions took place, which on their face are entirely consistent with the written brokerage contract. . . . It is the opinion of the court that the complaint is not clear, but is very confusing. . . . At best, if construed to allege a special agreement, it would leave two contracts between the same parties in force, covering practically the same subject-matter. . . . The conclusion of the court is that, properly construed, the complaint does not allege a special agreement independent of and not connected with the written contract declared on in paragraph 3 of the complaint. . . . The special contract contended for by the plaintiff, not having been sufficiently alleged in the complaint, the evidence of the plaintiff does not disclose any breach of the contract of brokerage as alleged, or any damages suffered thereunder, and the judge of the General County Court should have sustained defendant's motion for judgment as of nonsuit. . . . If the complaint were sufficient to set up and allege an additional special contract, then is there sufficient competent evidence to justify the submission of an issue as to the said special *Page 140 
contract to the jury? A careful reading of the pleadings, together with a consideration of the evidence, will, the court thinks, make it apparent that the minds of the said two contracting parties did not meet in such a special contract. . . . My conclusion as to this phase of the case is: Even granting the complaint is sufficient in its allegations of the special contract as claimed by the plaintiff, there is no sufficient competent evidence to justify the submission to the jury of an issue as to the alleged special contract and the breach of the same. . . . It is therefore ordered, adjudged and decreed that the judgment heretofore entered in this cause in the General County Court be reversed, and that this case be remanded to the General County Court, and the judge thereof will enter a judgment as of nonsuit herein, as hereby directed."
From the foregoing judgment the plaintiff appealed.
The plaintiff built his cause of action upon two theories:
First, a general contract of brokerage entered into with the defendant in 1928, which provided that a commission of two per cent would be paid on all sales made by the plaintiff for the defendant and approved by it.
Second, that a special agreement was entered into whereby the plaintiff procured the Ideal Mercerizing Company to purchase 20,000 pounds of yarn per week from the defendant upon certain terms and conditions, and that plaintiff was to receive two per cent commission on such sales.
The defendant resisted recovery upon two grounds:
First, that the plaintiff in his complaint had alleged a general contract of brokerage and was seeking to recover on a special contract not sufficiently pleaded.
Second, that the plaintiff was not entitled to recover in any event for that (a) the defendant had paid the plaintiff all sums due him on the regular brokerage contract of 1928, which payments were admitted by the plaintiff on the trial; (b) that the special contract proposed had never been approved or executed by the defendant, and that the directors of defendant had expressly refused to enter into such an agreement and had so notified the Ideal Mercerizing Company.
Manifestly, the plaintiff cannot recover upon his first or general brokerage contract. He said: "I was to receive two per cent commission on the sales of such yarns of the Acme Spinning Company as I sold, when sales were ratified by it, and I have received two per cent commission on all orders that were sold and ratified except the contract in question." Consequently the plaintiff goes out of court on his regular brokerage contract of 1928. *Page 141 
The inquiry must, therefore, shift to the status of the alleged special contract with the Ideal Mercerizing Company. The defendant strenuously asserts that no special contract was sufficiently pleaded. Indeed, the judge of the General County Court made an entry declaring that "the court itself did not understand that the plaintiff was alleging a new or special contract with reference to said transaction until he understood counsel of plaintiff to state in the progress of the trial that he was not relying upon the original contract, but upon the new contract." The judge of the Superior Court held the view that the special contract relied upon was not properly pleaded. However, the defendant offered evidence tending to meet and overthrow the alleged special contract, and, therefore, it would seem that the question as to whether such special contract was alleged, becomes an academic question. Both parties fought out both phases of the case with evidence. Hence the determinative question is whether there was any evidence tending to show that the special contract was consummated or resulted in a binding agreement. The pertinent decisions in this State speak plainly and definitely upon the method of establishing a contractual relation. They declare that a contract is not to be ascertained by what either one of the parties thought it was, but by what both agreed it should be. The law proceeds not upon the understanding of one of the parties, but upon the agreement of both. Prince v. McRae, 84 N.C. 674; Lumber Co. v.Lumber Co., 137 N.C. 436; Lumber Co. v. Boushall, 168 N.C. 501; OverallCo. v. Holmes, 186 N.C. 428.
Applying the accepted legal principle to the facts, it appears from the evidence: (a) that the proposed form of contract specified that "this contract shall become in force from the day of its signing." It was never signed. (b) Plaintiff testified: "At the time I called Mr. Suggs over the telephone about this matter to which I have referred, or at one of the times, he stated to me that any proposition that was made by the Ideal Mercerizing Company looking to such arrangement as was being proposed, would have to be submitted to and approved by his board of directors." The uncontradicted evidence is that the board of directors of defendant expressly declined to approve the proposal submitted to the plaintiff and the Mercerizing Company and refused to proceed further with the negotiations. Therefore, the negotiations between the parties did not head up into a binding agreement, and the plaintiff cannot recover for the breach of a contract which never existed either in fact or in legal contemplation.
Affirmed. *Page 142