## 10407

### McGREGOR v. STATE COMPANY AND THE IROGEN CHEMICAL COMPANY.

#### (103 S. E. 84.)

1. Libel and Slander—False Publication of Statement That Druggist Recommended Patent Medicine Does Not Warrant Inference of Injury.—The mere publication of false statement that a retail druggist's statement indorsed a particular patent medicine does not without more warrant an inference of injury.

2. Libel and Slander—Essentials of Actionable Libel Against Retail Druggist Stated.—To constitute actionable libel of a retail druggist concerning his business, the writing must have been inspired by malice; it must have tended to impeach the druggist's reputation and injured his business.

3. Pleading—Averment That Publication Was Libelous Is Conclusion.—An averment that a publication was libelous is a conclusion.

4. Libel and Slander—Publication May Be Both False and Malicious, But Not Actionable.—A publication may be false and malicious, but not actionable.

5. Libel and Slander—Mere Allegation of Injury Will Not Make It Actionable, and Question Is for the Court.—Mere allegations of injury from a publication of a false writing will not make it actionable, but the inference of hurt arising out of the statement of facts, in order to become actionable, must be such an inference as is established by the general consent of men, and the inference must be judged of by the Court in the first instance.

6. Evidence—Common Knowledge That Reputable Druggists Sell Patent Medicine.—It is common knowledge that patent medicines are sold by many reputable druggists.

Before Townsend, J., Richland, Summer term, 1919. Affirmed.

Action by E. C. McGregor, doing business as McGregor's Drug Store, against the State Company and the Irogen Chemical Company. From an order sustaining a demurrer to the complaint, plaintiff appeals.

The exception referred to is as follows:

The plaintiff herein excepts to the order of his Honor, W. H. Townsend, presiding Judge, dated May 21, 1919, upon the ground:

(1) That his Honor erred in holding and adjudging, "I do not think the publication was either libelous or calculated to injure the plaintiff," because:

(a) The pulication was libelous on its face as tending to represent the plaintiff as holding himself out as an indorser and sponsor for a patent medicine.

(b) The said publication was calculated to induce the public to believe that plaintiff was inr'orsing and recommending a patent medicine.

(c) The said publication was calculated to injure the plaintiff in his business, reputation and standing.

(d) The purport and meaning of the said publication should have been submitted to the jury for its determination.

*Mr. D. W. Robinson,* for appellant, cites: *As to general definition of actionable libel and slander:* Newell on Slander and Libel (3d Ed.), sec. 41, p. 75; sec. 47, p. 84; 17 R. C. L. 287; 93 S. C. 475; 99 S. C. 441; 71 S. C. 116; 9 Rich. Law 315; Dudley 310 (23 S. C. L.); 63 S. C. 530. *As to libel on one in his trade or professior* Newell on Slander and Libel (3d Ed.), p. 200, sec. 174, ψ. 227, sec. 200, page 83; 4 L. R. A. (N. S.) 861; 115 La. 979; 40 Sou. 376; 8 L. R. A. 527 (Mass.). *As to the· ight of a private individual to maintain an action for libel:* 34 L. R. A. (N. S.) 1141-2; 134 Ky. 424; 124 S. W. 364, and cases collated in note; 24 L. R. A. (N. S.), pp. 991 to 998 (note); 67 Atl. 392; 214 U. S. 188-90; 53 L. Ed. 962, 963; 115 La. 979; 4 L. R. A. (N. S.) 861; 40 So. 3. ó. *As to headlines of a newspaper:* 17 R. C. L. 350, sec. 97; 195 U. ·S., pp. 152-3; 15 Am. St. R. 347; 104 Am. St. Rep. 133; Newell on Slander and Libel, p. 82 (3d Ed.). *As to right of Court and jury:* 76 S. C. 513; 93 S. C. 475-6; 2 Rich. (31 S. C. L.) 68; 95 S. C. 98; Newell on Slander and Libel (3d Ed.), p. 363, sec. 344; 14 Am. St. Rep. 876; 127 Penn. St. 642; 61 S. C. 151; 34 L. R. A. (N. S.) 1141-2; 134 Ky. 424; 120 S. W. 364; Adv. Opinions, U. S. Supreme Court, October,

1918, p. 567; 63 L. Ed. —; 214 U. S. 185, 190; 53 L. Ed. 960, 962; 29 Sup. Ct. Rep. 554; 16 Ann. Cas. 1075; Newell on Slander and Libel (3d Ed.) 334-5, sec. 301. *Inuendo:* 63 S. C. 530; Newell on Slander and Libel (3d Ed.), p. 75, sec. 41.

*Messrs. Benet, Shand & McGowan,* for respondent, submit: *Was the language complained of libelous per se?* 76 S. C. 510; Code, vol. II, sec. 214; 13 Ency. P. & P. 32; 2 McC. 220; 2 N. & McC. 364; (R. I.) 24 L. R. A. (N. S.) 991, and note; 34 L. R. A. (N. S.) 1141-2; 214 U. S. 188; 67 Atl. 392; 8 L. R. A. 527; 4 L. R. A. 861; 63 S. C. 525; 93 S. C. 467; 71 S. C. 112; (Md. Ann. Cas.) 1914b, p. 712; (Mo.) Ann. Cas. 1914c, p. 985; Newell on Slander and Libel (2d Ed.), p. 161. *Should the purport and meaning have been submitted to a jury:* 70 S. C. 513; 13 A. & E. (2d Ed.), p. 106.

May 12, 1920.

The opinion of the Court was delivered by Mr. Justice Gage.

Action for libel. Demurrer by the State Company. Order sustaining the demurrer. Appeal by the plaintiff.

The circumstances of the case, apparent from the allegations of the complaint, are these: One of the defendants, the Irogen Chemical Company, was the manufacturer of a patent medicine called Irogen, said to contain "essential elements to red blood corpuscles;" that on March 20, 1918, and on March 24, 1918, there appeared in the State newspaper an unsigned display print and voluminous advertisement of this medicine, the objectionable part of which is thus set out in the complaint:

"Scientists Discover Nation's Secret of Regenerating Blood and Vital Powers. World's Greatest Authorities Demonstrate Irogen Is True Blood Builder. Druggists Tell How Irogen Invigorates. Greatest Strength Builder Known to Medical World. Supplies Elements Essential to Blood,

Steadies Nerves, and Confers Power of Resistance to Disease. Soon after it became known in Columbia that Irogen, the new strength and blood builder, had been discovered, leading druggists here immediately took steps to secure a supply in order that the people of this section might secure the benefit of science's latest effort. Several well known druggists even went so far as to make a thorough investigation of Irogen and learned of the amazing results said to have been experienced from its use. These well known men unhesitatingly and voluntarily came forward and declared their belief that the new discovery is the greatest strength builder known to the medical world. Their investigation showed that Irogen supplies the one element absolutely necessary to the blood, without which new blood cannot be generated. They also learned that in Irogen the human system is given that which steadies the nerves and gives the powers so necessary to resist disease.

"The following druggists of Columbia are the distributors of Irogen tablets and have received descriptive literature with full directions and explanations. * * * South Carolina Druggists Get Supply of Irogen Strength Builder. Shipments of New Product Hurried from Columbia, Charleston, and Spartanburg Wholesalers to Retail Druggists Throughout the State.

"It is officially announced that Irogen, acting in the nature of blood food, supplies the elements which nature requires for the generation of new, red blood corpuscles, and that its wonderful strengthening action is directly due to its regeneration of the blood, which imparts nourishment and new strength to nerves, muscles, and vital organs.

"Leading druggists of the State, who were among the first to introduce the new discovery into their respective communities, and who have had opportunity to observe its strengthening and curative effects in a great variety of chronic weaknesses and diseases, claim that the average person is, at this season of the year, abnormal in blood quality,

and that their blood absolutely requires the element which Irogen supplies. They predict that Irogen will be used by the public at large as a general strength builder and blood builder to overcome systemic and nervous weaknesses and to build up vigorous health and vital resistance to disease of all kinds.

"Residents of Columbia may obtain Irogen at any of the leading drug stores, as follows."

After the first advertisement, and before the second advertisement, the plaintiff wrote the State Company the following letter:

"March 20, 1918. The State, City: In your issue of this date, on page 9, in an advertisement of 'Irogen,' the name of McGregor's Drug Store, of which I am the proprietor, appears as one of the distributors of this medicine, and by inference as having investigated and indorsed it. This is to notify you that the publication of my name in this connection was entirely unauthorized by me, and I ask that you eliminate it from future advertisements of this medicine or any other unless sanctioned by me. Yours very truly."

The drug stores named in the advertisement as the distributors of the medicine included the plaintiff and 23 others in and about Columbia.

The Court rules, "I do not think the publication was either libelous or calculated to injure the plaintiff," and no more. There is one exception, subdivided into four postulates. Let the same be reported.

It is true that the publication tended to represent the plaintiff as holding himself out as an indorser and sponsor for a patent medicine, and that the publication was calculated to induce the public to believe that the plaintiff was indorsing and recommending a patent medicine.

But it is not reasonably true from the complaint that the publication was calculated to injure the plaintiff in his business reputation and standing.

To constitute actionable libel: (1) The writing must have been inspired by malice; (2) it must have tended to impeach the reputation of McGregor; and (3) thereby to injure his business. All the authorities so agree, and it ought not to be necessary to cite them.

The complaint alleges malice. The further allegation of the complaint is that the publication was "libelous;" but so much is the statement of a legal conclusion, and not of a fact. However, the publication may have been false and malicious, and yet not actionable. Nott, J., in *Mayrant v. Richardson,* 1 Nott & McC. 351, 9

It is true the complaint alleges that the publication tended to impeach the reputation of the plaintiff and to injure his business, but that bald allegation does not make the publication actionable, else a confessedly harmless act may be converted into a harmful act by a mere allegation.

The inference of hurt arising out of a statement of facts in order to become actionable, must be such an inference as is established by the general consent of men, and the inference must be judged of by the Court in the first instance. Odger on Libel and Slander, p. 25; 17 R. C. L. 264.

If the plaintiff was published as an indorser of Irogen, nothing else appearing and nothing else does appear, there is no reasonable inference to be drawn therefrom that his reputation was thereby impeached, or that his business was thereby injured. Indeed, it was stated at the bar that the plaintiff in fact had two bottles of the concoction on his shelves.

It is common knowledge that patent medicines are sold by many reputable druggists; and to hold that such a practice, nothing more appearing, is disreputable or hurtful, would be a *non sequitur* and a *dictum.*

The judgment below is affirmed.