12249

## MURPHY v. NEWS AND COURIER COMPANY

### (139 S. E., 189)

1. LIBEL AND SLANDER—NEWS ITEM STATING THAT PLAINTIFF, CAPTAIN OF BOAT CONTAINING LIQUOR, "WAS LODGED BEHIND THE BARS OF THE POLICE STATION IN THE DEFAULT OF $100 BOND" FOR APPEARANCE HELD NOT LIBELOUS PER SE.—Newspaper item stating that plaintiff, captain and pilot of a boat on which prohibition officers discovered liquor, "was lodged behind the bars of the police station in the default of $100 bond for his appearance in the police court" *held* not libelous *per se* as tending to show plaintiff of such poor standing in the community as to have been unable to obtain any one to go on his bond in the amount of $100, or unable to raise $100 to be deposited.

2. PLEADING—ADMISSIONS IN ANSWER ARE IMMATERIAL ON QUESTION OF SUFFICIENCY OF COMPLAINT AS AGAINST DEMURRER.—In action for libel, admissions made in answer are not relevant on issue whether complaint was sufficient as against demurrer.

Before BONHAM, J., Charleston, March, 1926.   Affirmed.

Action for libel by Thomas W. Murphy against the News and Courier Company.  Judgment for defendant, and plaintiff appeals.

*Messrs. Logan & Grace,* for appellant, cite: *"Libel per se":* Dudley, 303; 63 S. C., 525; 93 S. C., 475; 71 S. C., 116; 132 S. E., 584; 11 Q. B. D., 609.

*Messrs. Mitchell & Horlbeck,* for respondent, cite: *Unless language libelous per se, must allege special damages in order to support action:* 239 Pac., 1035; 212 N. Y. S., 219. *If language used is not libelous per se it cannot be made so by innuendo:* 1 Rich., 179; 114 S. C., 48; 116 S. C., 77; 138 Pac., 258; 83 Pac., 573; 76 S. C., 510.

NOTE: As to inferences drawn from statements made to render them actionable *per se,* see 17 R. C. L., 264; 3 R. C. L. Supp., 642; 4 R. C. L. Supp., 1113; 5 R. C. L. Supp., 936; 6 R. C. L. Supp., 1005.

August 23, 1927.

The opinion of the Court was delivered by MR. ACTING JUSTICE WHITING.

Action for libel arising out of the publication of a news item appearing in the News and Courier, in issue of date August 16, 1924, as follows:

"Police Sleuths Capture Launch.

"Sack and Stevens Seize 'Shine' Whisky on the Woodlawn.

"The launch Woodlawn, a forty-foot freight and passenger boat valued at $3,500, was yesterday afternoon seized by federal prohibition officers following the discovery by police detectives of thirty odd fruit jars of 'shine' stored on her forward deck, and T. M. Murphy, who has for many years piloted the boat in her trips up the Wando river, was lodged behind the bars of the police station in default of $100 bond for his appearance in the police court this morning to answer charges of violating the prohibition law.

"Detectives Sack and Stevens, prowling in the vicinity of the Accommodation wharf, where the boat was tied, when they decided to have a look at the innocent appearing old freighter, and a casual search revealed the presence of thirty-three fruit jars of liquor rather carelessly thrown on the forward deck, some of it with no covering of any description around it.

"Chief of Police Thomas P. Rutledge and Chief of Detectives John J. Healy hastened to the scene, and the whisky and Captain Murphy were removed to the station house.

"Following the seizure by the police, Federal Prohibition Officer Alonzo Seabrook swore out a warrant for Murphy, and removed the Woodlawn to the Charleston Dry Dock & Machine Company for storage."

The matter complained of as libel is the statement in the first paragraph of the article that Captain Murphy (the plaintiff in this action) was "lodged behind the bars of the

police station in default of $100 bond." The publication of this statement is alleged as false, malicious, defamatory, and libelous, and as tending "to hold the plaintiff up to ridicule, scorn, contumely, and contempt in the minds of his fellow citizens and to place him in disrepute." The elements of damage alleged in the complaint are that plaintiff "has been injured in his reputation and his business and hurt in his feelings to his damage of $15,000." Other allegations in the complaint relate to the business, reputation, and standing of plaintiff and the application of the publication to plaintiff, as intended and also as necessarily understood by those who read the article. As matter of innuendo, the plaintiff further alleges in the sixth paragraph of his complaint:

"That the defendant by such publication falsely published and meant to publish the plaintiff as being a person of such poor standing in the community in which he lives and does business, and has for the past several years lived and done business, as to have been unable to obtain any one to go on his bond in the amount of $100 to secure his appearance at the police court, or of being in such a condition of financial destitution as to have been unable to raise an amount of $100 to be deposited to secure such appearance, and further falsely published the plaintiff, and meant to publish him, as having been subjected to the disgrace of having been locked up in a cell in the police station, and by implication of having had to spend a night locked up in such cell."

The sufficiency of the complaint to make out a cause of action was questioned by oral demurrer made, after due notice, on the call of the case for trial. In addition to the ground that the words of the article (in the matters complained of) were not libelous *per se* and that there was no allegation of special damages, a third ground of demurrer was urged, as follows:

"That the conclusion and inference sought to be drawn by the plaintiff from the alleged publication as being libelous

is not, as a matter of law, a necessary conclusion or inference arising from the language used, and if it were the same is not libelous, so that the law would presume damages resulted therefrom."

Circuit Judge M. L. Bonham sustained the demurrer and dismissed the complaint in a formal order. An appeal has been taken from Judge Bonham's order upon four exceptions which present however but one proposition; namely, that the publication complained of is defamatory and libelous, and that the law will presume damages resulting therefrom.

Opinions rendered by this Court in recent libel cases have considered and carefully reviewed the authorities on the law of libel, covering almost every phase of the subject that is likely to arise. No purpose can be served by further examination of the authorities, as the only question here involved is the application of well-settled rules of law to the facts alleged in the complaint. An ample statement of the principles of law which govern the determination of this appeal is found in the opinion of Mr. Justice Gage in *McGregor v. State Company,* 114 S. C., 49, 53; 103 S. E., 84, 85:

"To constitute actionable libel: (1) The writing must have been inspired by malice; (2) it must have tended to impeach the reputation of McGregor; and (3) thereby to injure his business. All the authorities so agree, and it ought not to be necessary to cite them.

"The complaint alleges malice. The further allegation of the complaint is that the publication was 'libelous'; but so much is the statement of a legal conclusion, and not of a fact. However, the publication may have been false and malicious, and yet not actionable. Nott, J., in *Mayrant v. Richardson,* 1 Nott & McC., 351; 9 Am. Dec., 707.

"It is true the complaint alleges that the publication tended to impeach the reputation of the plaintiff and to injure his business, but that bald allegation does not make the publi-

cation actionable, else a confessedly harmless act may be converted into a harmful act by a mere allegation.

"The inference of hurt arising out of a statement of facts in order to become actionable, must be such an inference as is established by the general consent of men, and the inference must be judged of by the Court in the first instance. Odger on Libel and Slander, p. 25; 17 R. C. L., 264."

In appellant's argument some stress is placed upon the admission made in defendant's answer that the plaintiff was found not guilty of the offense with which he was charged. Without undertaking to pass upon the bearing of this admission if the point was raised upon a trial of issues made by complaint and answer, it is clear that it is not relevant to our consideration in deciding this appeal where the only question involved is the sufficiency of the complaint, within itself, to constitute a cause of action.

To hold libelous *per se* the mere statement that one has failed, or even that he was unable, to furnish bond—whether the amount required be large or small—would be carrying the law of libel beyond any precedent that has been called to our attention. Many a good citizen, if suddenly and unexpectedly arrested without reason for forearming himself against the contingency of such arrest, perhaps might be reluctant to call in friends who would relieve his embarrassment, but enjoy his misadventure. The matter of giving bond is an incident which attaches to the fact of arrest. We do not think it can be said that, "in the common estimation of mankind," the failure of a person so arrested to give an appearance bond would carry the implication of poor standing in the community, lack of friends, or a condition of financial destitution; and, if it gave the impression of unpreparedness to furnish bond or financial destitution, might not even this be regarded by many—possibly by the majority of those reading the write-up of the occurrence—as a circumstance in favor of the person arrested, tending to show his lack of participation in the un-

lawful transportation of the liquor seized, and hence his unpreparedness to meet the ever-present danger of arrest which confronts the habitual lawbreaker in his activities?

The judgment of this Court is that the order sustaining the demurrer be affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, STABLER and CARTER concur.

MR. JUSTICE BLEASE did not participate.