18660

Russell Earl DAUTERMAN, Jr., Appellant, v. The STATE-RECORD COMPANY, Respondent

(154 S. E. (2d) 919)

513

*Harvey L. Golden, Esq.,* of Columbia, *for Appellant,*

*Harvey L. Golden, Esq.,* of Columbia, *for Appellant,*
*in reply,*

514

May 30, 1967.

Per Curiam.

This is an appeal from an order of the circuit court, which will be reported herewith, granting respondent's motion for a judgment *non obstante veredicto* in a libel action. We have carefully considered the record, as well as the briefs of counsel, and conclude that there was no error on the part of the circuit court in granting a judgment for respondent.

Under all of the circumstances reflected by the record, we think the circuit judge correctly concluded that the language complained of was not actionable, but, even if the statement as to the appellant "drinking 'quite a bit' Monday" be considered libelous, the record reflects that such statement was substantially true. Appellant himself testified that he had a bourbon on the rocks for lunch that day, and another when he came in from work that afternoon. The appellant, in a letter explaining the tragic occurrence to the Dean of his department, written shortly after such occurrence, stated that he and a Mr. Edwards "drank a few beers" within the hour preceding the occurrence.

As to slapping the baby, one year old, appellant's testimony was to the effect that he simply "gave him one gentle pat on the bottom." While the views of people, including appellant and his wife, vary as to corporal punishment, and the extent thereof, which should or should not be properly administered to children, no authority has been cited, or come to our attention, for the proposition that a false statement that a parent on one isolated occasion slapped a child is actionable.

The judgment of the lower court is

Affirmed.

The Order of Judge Spruill follows:

The above-entitled case was tried at the November Term of Common Pleas for Richland County and resulted in a verdict for the plaintiff for $5,000.00 actual damages. The plaintiff was represented by Mr. Harvey L. Golden and the defendant was represented by Mr. D. W. Robinson. After verdict the defendant moved for judgment *N. O. V.* or, in the alternative, for a new trial. This motion was marked "heard" and was subsequently argued.

On the evening of June 10, 1963, the plaintiff, who was then an instructor at the University of South Carolina, was involved in an argument with his wife, whom he has since divorced, and Mrs. Dauterman shot him with a .22 calibre rifle. Mr. Dauterman was taken to the Columbia Hospital and Mrs. Dauterman was taken to the police station. On the following morning, June 11, 1963, The State newspaper published the following account of the shooting of the plaintiff by his wife:

"Rifle Shot Hits USC Professor—A University of South Carolina professor was shot in the chest in his apartment Monday night.

"City police officers arrested Mrs. Judy Dauterman, 22, of 732 Pickens St., Apt. 15 in connection with the 8:15 p. m. shooting.

"Mrs. Dauterman told police her husband, Dr. Russell Dauterman of the University Department of Philosophy, slapped their baby, Phillip. She said she became furious and they exchanged words.

"She said she later went into the bedroom where she took a .22 rifle out of the closet. The report said she shot her husband, who was standing in the next room. The bullet penetrated the lower right chest.

"The police report quoted Mrs. Dauterman as saying she did not see her husband at the time, but heard a noise in the next room and fired.

"Mrs. Dauterman also told officers she and her husband had been drinking 'quite a bit' Monday. She admitted being 'pretty high' at the time of the shooting.

"Dauterman's attending physician listed his condition as 'good' late Monday night. He was at Columbia Hospital. Officers said late Monday evening that Mrs. Dauterman would be released under $1,000 bond pending the outcome of her husband's condition.

"Investigating officers include Detective D. P. Eleazer, Sgt. H. W. Steinert and Officer J. T. Hamiter."

This action is one for libel based on the publication of the above news story. The plaintiff's complaint sets out the innuendo involved in the publication and alleges special damages as follows:

"4. On June 11, 1963, The State Newspaper, on page 6-A, Column 4, contained an article which inferred and tended to lead its readers to believe that Plaintiff was a cruel and intemperate person, of questionable morals, not fit to be in the teaching profession.

"5. A copy of said article is attached hereto as Exhibit 'A' and, by reference, made a part of this Complaint.

"6. Said article widely published and intentionally repeated untrue and defamatory statements tending to degrade Plaintiff's reputation, which statements were made by Plaintiff's ex-wife, who was, and has been an emotionally and mentally disturbed person.

"7. As a direct and proximate result of the aforementioned publication: generally, the Plaintiff's good name and reputation have been degraded and defamed, he has been held up to public ridicule, scorn and intense humiliation and embarrassment; specially, the Plaintiff's employment at the University of South Carolina was terminated by its administration and he has been permanently damaged and his reputation has been permanently tarnished with respect to his future employment opportunities in the highly sensitive profession of teaching Philosophy to young college students,

which he had intended to make his life's work, and to which he has devoted many long and hard years of study, considerable effort and expense; additionally, Plaintiff was forced to vacate his home, remove his personal effects and seek living quarters elsewhere, all to his injury in the sum of Two Hundred Thousand Dollars ($200,000.00) actual and punitive damages."

The defendant set up in its Answer that the publication was qualifiedly privileged as being an accurate account of the information set out on the police blotter, this being the information prepared at the police station by the officers investigating the shooting of Mr. Dauterman by his wife. The Court sustained this position insofar as it went to the publication of the fact that the plaintiff had been shot, that he had been taken to the Columbia Hospital, that he was an employee at the University, and that his wife had been detained for the shooting. The Court did not sustain this position of the defendant insofar as it went to the publication of the account of what Mrs. Dauterman told the police officers.

There is considerable divergence of authority on the question of privilege in reporting police investigations. However, the writer is of the opinion that the sounder authority is to the effect that these are not privileged as are reports of judicial proceedings. The writer feels that privilege does extend to publication of the fact that the plaintiff had been shot and that his wife had been detained for the shooting. He is, however, of the opinion that the statement of the party arrested for the shooting of Mr. Dauterman is not more privileged than would be the publication of a statement by any other party. The writer takes judicial notice of the fact that it is not infrequently the case that a party arrested for an assault upon another will seek to justify by slanderous accusations. These are libelous if repeated in the public press. In short, had Mrs. Dauterman, in an attempt to justify her actions, stated falsely that she shot her husband because he raped the baby sitter, it is hardly to be questioned that the publication of this statement in the next morning's

newspaper would have been libelous *per se* and its publication would not have been qualifiedly privileged.

The writer is, however, of the opinion that he should have directed a verdict for the defendant on the grounds that the publication set out above was not libelous. Certainly the publication of that part of the story which was qualifiedly privileged and likewise true was calculated to injure the plaintiff in certain respects but such damage gives rise to no cause of action. In short, the fact that the plaintiff and his wife were on such terms that she would shoot him, made them less desirable tenants and as the plaintiff's witness, Mr. Lane, intimated this was the cause of the termination of his lease. Also marital discord of a degree which would prompt a shooting of the husband by the wife was unfavorable to the plaintiff as a member of the faculty at the University of South Carolina and probably contributed to the termination of his employment. However, the only part of the publication which could serve as the foundation for a verdict for libel is the statements contained in the third and sixth paragraphs of the news story which repeated information given by Mrs. Dauterman relative to the affray between herself and her husband. These are to the effect that Mrs. Dauterman told police that her husband slapped their baby and that she and her husband had been drinking "quite a bit" on Monday, the shooting having occurred on Monday evening. By his allegation as to innuendo the plaintiff alleges that this held him out to be "a cruel and intemperate person, of questionable morals, unfit to be in the teaching profession." In the writer's opinion, the words written about the plaintiff are not susceptible of the meaning ascribed to them by the innuendo. In this connection it seems pertinent to quote as follows from the case of *McGregor v. State Co.,* 114 S. C. 48, 103 S. E. 84, at page 85:

"It is true the complaint alleges that the publication tended to impeach the reputation of the plaintiff and to injure his business, but that bald allegation does not make the publication actionable, else a confessedly harmless act may be converted into a harmful act by a mere allegation.

"The inference of hurt arising out of a statement of facts in order to become actionable, must be such an inference as is established by the general consent of men, and the inference must be judged of by the court in the first instance."

The language complained of by the plaintiff was naturally displeasing to him and was unquestionably of an unfavorable nature. However, it by no means follows that a publication which is unfavorable is also libelous. See *Hubbard v. Furman University,* 76 S. C. 510, 57 S. E. 478; *Oliveros v. Henderson,* 116 S. C. 77, 106 S. E. 855; *Murphy v. News and Courier,* 141 S. C. 51, 139 S. E. 189; *Jackson v. Record Pub. Co.,* 175 S. C. 211, 178 S. E. 833; and *Costas v. Florence Printing Co.,* 237 S. C. 655, 118 S. E. (2d) 696.

As the writer is of the opinion that he erred in not directing a verdict for the defendant,

It is ordered that judgment be entered for the defendant notwithstanding the verdict.