John Paul ANDERSON, Appellant,

v.

STANCO SPORTS LIBRARY, INC., Appellee.

No. 75–2031.

United States Court of Appeals, Fourth Circuit.

Argued Aug. 26, 1976.

Decided Oct. 5, 1976.

---

CRAVEN, Circuit Judge:

John Paul Anderson sued Stanco Sports Library, Inc., publisher of *Detective Cases* magazine, for malicious libel. He has appealed the district court's entry of summary judgment for the defendant. We affirm.

### I.

In December 1965 Anderson was convicted of the murder of his wife and was sentenced to life imprisonment. His trial in Charleston County, South Carolina, lasted for over a week and was reported by the local newspapers. Eventually, a transcript of the proceeding was published in five volumes.

Apparently based on these newspaper accounts and the transcript, Stanco's predecessor published an article concerning the events surrounding Anderson's murder conviction. The article appeared in the April 1966 edition of *Detective Cases* and was entitled, "Swim with Murder Off Folly Beach." In May 1968 Stanco, which by then had become the publisher of *Detective Cases,* republished the story about Anderson, this time under the title, "Double-Indemnity for a Sleep-Around Wife." The second article was identical to the first, except for the new title and different picture captions.

In April 1969 Anderson brought this libel action against Stanco. He based his suit on some 20 excerpts taken from the two articles, which statements he claimed were libelous, false and malicious. In its answer the defendant admitted that it had published the second article[1] but claimed that the excerpts listed by Anderson were true and were published without malice. It further alleged that the publications were privileged as a matter of law, since they constituted fair comment on a judicial proceeding and since Anderson was a notorious and newsworthy person.

Following a hearing on defendant's motion, the district court granted summary judgment in favor of the defendant. He

Frank K. Sloan and Betty M. Sloan, Columbia, S. C., for appellant.

Harvey L. Golden, Columbia, S. C., for appellee.

Before CRAVEN and BUTZNER, Circuit Judges, and FIELD, Senior Circuit Judge.

1. It need not be determined whether Stanco could be held liable for the publication of its predecessor, for both parties agree that action on the April 1966 article was barred by the statute of limitations. *See,* S.C. Code Ann. § 10–145(1) (1962).

found that Anderson was a "public figure" and that the publication concerned an event "of public interest," thus necessitating application of the constitutional privilege first announced in *New York Times Co. v. Sullivan,*[2] 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The district court then found that the record as a whole contained no evidence that could support the actual malice showing that *New York Times* required, *i. e.,* that Stanco had published the statements with knowledge of their falsity or with reckless disregard of whether they were false, and entered summary judgment in favor of the defendant.

## II.

■ The development of libel law has been dominated in recent years by the prin-

ciples enunciated in *New York Times Co. v. Sullivan, supra,* and its progeny. The scope of the constitutional privilege afforded media defendants is still undergoing a process of definition and clarification, as the recent Supreme Court decision in *Time, Inc. v. Firestone,* 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976), illustrates.[3] Although it is clear that public officials and "public figures" must establish "actual malice" in their libel suits, it is not clear whether a particular plaintiff falls within one of those categories. Determining whether someone is a "public figure" may be especially difficult.[4] We find it unnecessary to decide whether a convicted murderer is a public figure,[5] because even if not, the granting of summary judgment in favor of the defendant was proper for other reasons.

2. The decision in *New York Times* requiring proof of "actual malice" applied only to suits brought by public officials. This doctrine, however, was later extended to suits brought by "public figures." *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). The decision upon which the district court relied in granting summary judgment, *Rosenbloom v. Metromedia,* 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), marked the furthest reach of the *New York Times* standard. In that case the plurality decision held that a plaintiff, regardless of the degree of his fame or anonymity, must prove actual malice if the publication in question concerns an event of public or general concern. This approach, however, was later abandoned. In *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Court announced that application of the *New York Times* standard depends upon the character of the allegedly defamed plaintiff, not on the degree of newsworthiness of the subject matter.

3. In that case the Court held that plaintiff, Mary Alice Firestone, was not a public figure even though engaged in a highly publicized divorce suit, as she did not "thrust [her]self to the forefront of particular public controversies in order to influence the resolution of the issues involved," and thus was not required to prove actual malice. At 453, 96 S.Ct. at 965.

4. The definition of "public figure" that was announced in *Gertz, supra,* and reaffirmed in *Firestone, supra,* is as follows:
    "For the most part those who attain this status have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influ-

ence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." At 453, 96 S.Ct. at 965.

5. The Court's opinion in *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), although an invasion of privacy rather than libel suit, may be seen as supporting the conclusion that Anderson is a public figure. There the Court stated that "[t]he commission of crime, prosecution resulting from it, and judicial proceedings arising from the prosecutions . . . are without question events of legitimate concern to the public and consequently fall within the responsibility of the press to report the operations of government." *Id.* at 492, 95 S.Ct. at 1045. In the subsequent *Firestone* decision, however, the Court expressly rejected the argument that the reasoning of *Cox Broadcasting* should be extended to require the showing of actual malice in libel suits arising out of reports of judicial proceedings. It said that accepting such an argument would require a return to the *Rosenbloom* approach that was rejected by *Gertz.* The Court emphasized the importance of the voluntariness of the libel plaintiff's fame, stating:
    And while participants in some litigation may be legitimate "public figures," either generally or for the limited purpose of that litigation, the majority will more likely resemble respondent, drawn into a public forum largely against their will in order to attempt to obtain the only redress available to them *or to defend themselves against actions brought by the State or by others.* At 457, 96 S.Ct. at 967 (emphasis added).

### III.

Anderson does not deny that he was convicted of murdering his wife and that the article published by the defendant was in most respects supported by sworn testimony at his trial. Anderson argues, however, that the defendant took truthful statements and exaggerated or embellished them, thereby rendering them libelous. We think that this argument is without merit.

The examples given by Anderson show the insubstantial nature of his claim. One excerpt that he alleges to be libelous stated that "[a] third shipmate of Anderson's testified that [Anderson] had boasted of being a high ranking member of the Mafia." Although admitting that he had claimed membership in the Mafia, Anderson argues that this statement was libelous because he had never claimed to be *high ranking*. We think that this deviation, as well as the others he cites, is without legal significance.

Under the law of South Carolina, applicable in this diversity jurisdiction case, "substantial truth" is a valid defense to a libel claim. In *Dauterman v. State-Record Co.*, 249 S.C. 512, 154 S.E.2d 919 (1967), for example, the South Carolina Supreme Court held that even if the statement that plaintiff "had been drinking quite a bit" might be considered libelous, it was not actionable because the record reflected that it was substantially true. We think that the record in the present case similarly reflects that the statements alleged by Anderson to be libelous were substantially true. Any deviations from the sworn testimony at trial were inconsequential embellishments made by the author to add color or interest to the article. They did not cause Anderson's "good name" to be sullied any more than it already had been by the fact of his murder conviction. Even in his own deposition Anderson failed to state unequivocally that the allegedly libelous statements were false. Again and again, in response to questions as to detail, he said he could not remember or did not know. Nor did he by affidavit or otherwise offer evidence establishing a conflict as to whether the statements were false in any substantial degree. Under the rules governing summary judgment, the granting of defendant's motion was therefore proper. "[I]t is certainly well settled that the opposing party is not entitled to hold back his evidence until trial, and is not entitled to a trial on the possibility that an issue of material fact might arise if the case were to go to trial on the merits." 6 Pt. 2 J. Moore, Federal Practice ¶ 56.23, at 56–1391 (1976) (footnotes omitted).

The granting of summary judgment is especially appropriate in libel cases, for prolonging a meritless case through trial could result in further chilling of First Amendment rights. *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 864–865 (5th Cir. 1970). We conclude, therefore, that the district court properly entered summary judgment in favor of the defendant, as the record clearly shows that the allegedly libelous statements were substantially true.

The judgment of the district court will be

*AFFIRMED.*